Deborah Nancy SOUTHWELL, Appellant,

v.

UNIVERSITY OF THE INCARNATE
WORD f/k/a Incarnate Word
College, Appellee.

No. 04–97–00817–CV.

Court of Appeals of Texas,
San Antonio.

May 29, 1998.

Rehearing Overruled July 15, 1998.

Judith Ramsey Saldana, San Antonio, for Appellant.

William H. Quirk, III, Beckmann & Quirk, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

Deborah Nancy Southwell appeals a summary judgment granted in favor of the University of the Incarnate Word. Southwell raises seven issues on appeal, contending that the trial court erred in granting Incarnate Word's motion for summary judgment because (1) fact issues exist regarding the existence of a contract between the parties, whether the contract was breached, and whether Incarnate Word violated the Deceptive Trade Practices Act; (2) neither Incarnate Word's motion nor the trial court's order addressed Southwell's breach of contract claim; (3) Incarnate Word failed to properly object to Southwell's summary judgment proof; and (4) the trial court erred in overruling Southwell's objections to Incarnate Word's summary judgment proof. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Southwell was a student in the nursing program at Incarnate Word from 1993 to 1995. She enrolled under the 1993–1995 Undergraduate Bulletin of Incarnate Word College and the BSN Handbook. The program in which Southwell was enrolled required her to successfully complete both academic and clinical course work and to be recommended for graduation by the nursing faculty in order to receive her Bachelor of Science degree in nursing.

The semester before Southwell anticipated receiving her degree, she was enrolled in a required Nursing Leadership/Management course. The course consisted of both academic and practical components. Southwell successfully completed the academic component of the course. However, during the practical component, Maureen Reilly, the clinical instructor, ordered Southwell off of the hospital floor after Southwell compromised the safety of a patient.

Southwell hired an attorney, and, after negotiations, Incarnate Word offered Southwell the opportunity to complete the Nursing Leadership/Management clinical requirement through an independent assessment. Southwell chose to participate in the independent assessment. She was evaluated by Catherine Murk during a week-long practicum. Unfortunately, Southwell received a failing grade in the practicum, resulting in her failure of the Nursing Leadership/Management course. Accordingly, Southwell was unable to obtain her degree as scheduled. Southwell did not, however, apply for retention in the program as specified in the BSN Handbook. Instead, she filed this lawsuit.

Southwell sued Incarnate Word, the dean of nursing, and three faculty members, alleging breach of contract, violations of the Deceptive Trade Practices Act, intentional infliction of emotional distress, tortious interference with contract, breach of good faith and fair dealing, promissory estoppel, fraud, slander, slander *per se*, conspiracy, and false imprisonment. Incarnate Word and the individual defendants filed separate motions for summary judgment. Several responses and replies to those responses were also filed.

An associate judge heard the motions and ordered that Incarnate Word's and the individual defendants' motions for summary judgment were in all things granted. Southwell appealed the associate judge's decision. Following a *de novo* review, the trial court also granted Incarnate Word's and the individual defendants' motions for summary judgment on all of Southwell's claims except promissory estoppel and breach of good faith and fair dealing. The parties then entered into a Rule 11 agreement whereby Southwell agreed to drop her promissory estoppel and breach of good faith and fair dealing claims and to waive her right to appeal all causes of action except her breach of contract and DTPA claims against Incarnate Word. Incarnate Word and the individual defendants agreed to dismiss their counter claims and motions for sanctions.

## ARGUMENT AND AUTHORITY

### A. Summary Judgment Evidence

■ In her sixth issue on appeal, Southwell contends that Incarnate Word's objections to her summary judgment proof were not adequately specific. Further, Southwell argues, and Incarnate Word concedes, that Incarnate Word failed to obtain written rulings on its objections to Southwell's summary judgment evidence. However, Incarnate Word contends that, because the trial court sustained identical objections offered by its co-defendants, its objections were impliedly sustained.

First, we note that Incarnate Word's objections to Southwell's summary judgment proof are not identical to the objections made by the individual defendants as Incarnate Word suggests. The individual defendants made very specific objections to specific statements contained in Southwell's affidavits, enabling the trial court to sustain the objections to only certain statements in the affidavits. On the other hand, Incarnate Word's objections were blanket assertions that Southwell's affidavits were conclusory, speculative, and not based on personal knowledge. Accordingly, it would be an

overstatement to say that the trial court's rulings as to the individual defendants' objections apply, by implication, to Incarnate Word's objections. *Cf. Beutel v. Dallas County Flood Control Dist.*, 916 S.W.2d 685, 694 (Tex.App.—Waco 1996, writ denied) (stating that, in trials involving multiple defendants, each party must satisfy its own objection to the evidence if it wishes to preserve error for appeal).

Even assuming that Incarnate Word's objections were sufficiently specific, the affidavit must remain part of the summary judgment record as applied to Incarnate Word unless an order sustaining the objection was "reduced to writing, signed, and entered of record." *Giese v. NCNB Texas Forney Banking Center*, 881 S.W.2d 776, 782 (Tex. App.—Dallas 1994, no writ); *Eads v. American Bank, N.A.*, 843 S.W.2d 208, 211 (Tex. App.—Waco 1992, no writ); *Utilities Pipeline Co. v. American Petrofina Mktg.*, 760 S.W.2d 719, 723 (Tex.App.—Dallas 1988, no writ). Although Incarnate Word objected to Southwell's affidavit, it does not contest that it failed to secure rulings on those objections. Therefore, Southwell's affidavit must remain part of the summary judgment record as it pertains to Incarnate Word. *See Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 160–61 (Tex.App.—Waco 1995, no writ).

■ Contrary to Southwell's assertion, the fact that Southwell's affidavit is to be considered as part of the summary judgment record does not require that the summary judgment be summarily reversed. Because there is no evidence that the trial court sustained Incarnate Word's objections to Southwell's affidavit, we simply presume that the trial court considered the affidavit in determining that Incarnate Word was entitled to summary judgment on Southwell's causes of action.

■ In her seventh issue on appeal, Southwell contends that the trial court erred in overruling her objections to Incarnate Word's summary judgment evidence. The evidence at issue consists of the affidavits of Brenda Jackson, Holly Cassells, Jennifer Cook, Catherine Murk, and Maureen Reilly. All the affiants are faculty members in the nursing program at Incarnate Word, and each relayed her knowledge of Southwell's performance in the clinical and in the independent assessment. In short, Southwell contends that the affidavits are conclusory and contain unsubstantiated opinion and hearsay.

A review of these affidavits reveals that they all constitute competent summary judgment evidence pursuant to TEX.R. CIV. P. 166a (f). They convey each affiant's personal knowledge, as nursing faculty, of Southwell's performance as a nursing student and factual assertions regarding the faculty's actions. Any conclusions or personal opinions contained in the affidavits are based upon knowledge of the facts and are substantiated by each affiant's experience and position. We, therefore, conclude that the trial court did not err in overruling Southwell's objections to the affidavits.

### B.  Issues to be Considered on Appeal

■ In her second issue on appeal, Southwell contends that her breach of contract claim should remain before the trial court because neither Incarnate Word's motion for summary judgment nor the trial court's summary judgment order addresses the breach of contract claim. The trial court's summary judgement order states:

> Defendant, The University of the Incarnate Word f/k/a Incarnate Word College's Motion for Summary Judgment is in all things **GRANTED**. Specifically, the Court granted Defendant, Incarnate Word's Motion for Summary Judgment *on contract*, violation of the Deceptive Trade Practices Act, the request for attorney's fees, the request for exemplary damages, slander, slander *per se*, false imprisonment, intentional infliction of emotional distress, tortious interference with a contractual relationship and conspiracy. (emphasis added)

Southwell contends that, because the order does not specifically refer to "breach" of contract, the trial court did not grant summary judgment as to her breach of contract claim. Southwell's claim is without merit.

■ The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) that the plaintiff per-

formed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. *Wright v. Christian & Smith,* 950 S.W.2d 411, 412 (Tex.App.—Houston [1st Dist.] 1997, no writ); *Garner v. Corpus Christi Nat. Bank,* 944 S.W.2d 469, 476 (Tex. App.—Corpus Christi 1997, writ denied); *St. Paul Ins. Co. v. Rakkar,* 838 S.W.2d 622, 629 (Tex.App.—Dallas 1992, writ denied). In its motion for summary judgment, Incarnate Word clearly focused on negating the first two elements of Southwell's claim. Specifically, Incarnate Word, in its motion for summary judgment, alleged that no contract ever existed between Incarnate Word and Southwell, and if a contract did exist, Southwell violated its terms. Based on these arguments and the supporting proof, Incarnate Word argued that Southwell's breach of contract claim could not stand and that Incarnate Word was entitled to summary judgment.

In stating that Incarnate Word's motion for summary judgment was granted "on contract," the trial court's order reflects that the trial court sustained at least one of Incarnate Word's arguments regarding the issue of contract. Either one of Incarnate Word's alternative arguments negates an essential element of Southwell's breach of contract claim. *See id.* Accordingly, the trial court's order properly disposed of the entire breach of contract cause of action. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985) (stating summary judgment proper where at least one element of a cause of action is disproved).

In her third issue on appeal, Southwell contends that she raised a fact issue regarding whether Incarnate Word breached the alleged contract it had with Southwell by failing to award her a degree in nursing. However, the issue of Incarnate Word's breach is irrelevant to this appeal because the issue was not before the trial court during the summary judgment proceeding. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979) (stating that, in granting motion for summary judgment, trial court is confined to the specific grounds set forth in the motion.). Our review of the trial court's judgment, as it pertains to Southwell's contract claim, is limited to those issues raised by Incarnate Word's motion and considered by the trial court. Incarnate Word's motion alleged only that there was no contract and, if there was a contract, Southwell breached it herself. Because the issue of whether Incarnate Word breached any contract it may have had with Southwell was not addressed in the trial court, the issue is not before us on appeal.

## C. Existence of a Contract and Southwell's Breach

In her first issue on appeal, Southwell contends that she raised a fact issue regarding whether a contract existed between herself and Incarnate Word, whereby Southwell would pay the required tuition and earn a passing grade in all nursing courses in exchange for which Incarnate Word would confer upon her a Bachelor of Science Degree in Nursing. Specifically, Southwell alleges that Incarnate Word's 1993–1995 Undergraduate Bulletin and the 1993 BSN Student Handbook, under which she entered the University, constitute a contract between Incarnate Word and Southwell.

Several Texas cases have addressed the issue of whether a university's student bulletin or handbook constitute a contract between the university and the student. *See, e.g., Alcorn v. Vaksman,* 877 S.W.2d 390, 403 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Tobias v. University of Texas at Arlington,* 824 S.W.2d 201, 211 (Tex.App.—Fort Worth 1991), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993); *Eiland v. Wolf,* 764 S.W.2d 827, 837–38 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *University of Texas Health Science Center v. Babb,* 646 S.W.2d 502, 506 (Tex.App.—Houston [1st Dist.] 1982, no writ). The court in *Babb* held that "a school's catalog constitutes a written contract between the educational institution and the patron, where entrance is under its terms." *Babb,* 646 S.W.2d at 506. However, later cases have distinguished *Babb* based upon the fact that the catalogs at issue contained express language that the provisions of the catalog did not constitute a contract. *See Tobias,* 824 S.W.2d at 211

(noting catalog stated that provisions of catalog do not constitute a contract); *Eiland,* 764 S.W.2d at 838 (quoting catalog as stating that its provisions do not constitute an irrevocable contract).

The bulletin at issue in this case does not, in and of itself, create a contract between Incarnate Word and Southwell for the reasons expressed in *Tobias* and *Eiland.* The title page of the bulletin contains notice that "[t]his bulletin is for informational purposes only.... The college reserves the right to change or alter any statement herein without prior notice." While not as forceful as the disclaimers in *Tobias* and *Eiland,* this statement clearly evidences a lack of intent by Incarnate Word to be bound by the terms of the bulletin. *See Eiland,* 764 S.W.2d at 838 (holding intent to be bound is basic requisite of contract); RESTATEMENT (SECOND) OF CONTRACTS § 27, cmt. c (1981) (noting intent to be bound is a necessary element of the existence of a contract); *see also S & A Marinas, Inc. v. Leonard Marine Corp.,* 875 S.W.2d 766, 769 (Tex.App.—Austin 1994, writ denied) (stating the terms of the alleged written contract will be deemed to express the presence or absence of intent to be bound).

While the bulletin itself does not create a contract between Incarnate Word and Southwell, we find that a contract exists nonetheless. As the court noted in *Eiland,* a contractual relationship need not necessarily be logically inferred to exist between a student and a public school because education at such institutions is a benefit bestowed by the State. *Eiland,* 764 S.W.2d at 838. However, "the relationship between a private school and its student has by definition primarily a contractual basis." *Id.* If such were not the case, neither the school nor the student would have a remedy at a private institution in situations in which non-performance caused damage. Accordingly, where a private college or university impliedly agrees to provide educational opportunity and confer the appropriate degree in consideration for a student's agreement to successfully complete degree requirements, abide by university guidelines, and pay tuition, a contract exists. *See Smith v. Renz,* 840 S.W.2d 702, 704 (Tex.App.—Corpus Christi 1992, writ denied) (stating an implied contract arises from the dealings of the parties, from which the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement thereto). The specific terms of such a contract must logically be defined by the college or university's policies and requirements. And, in the absence of a binding catalog, the student agrees that those terms are subject to change throughout the course of his or her education.

Under this analysis, a contract was impliedly created between Incarnate Word and Southwell when Southwell enrolled at Incarnate Word. Therefore, Incarnate Word was bound to offer the curriculum and instruction necessary for Southwell to achieve a nursing degree and to confer that degree in exchange for Southwell's agreement to pay the requisite tuition and successfully complete the requirements necessary to obtaining the degree as set forth in the bulletin.

However, in spite of the existence of the contract, the summary judgment evidence reflects that Southwell failed to satisfy her obligations under the contract. The contract does not create an automatic entitlement to a degree. Southwell acknowledges that, in order to obtain her degree, she was required to *successfully* complete the degree requirements. Those requirements are described in the Undergraduate Bulletin. The bulletin provides that students must maintain satisfactory standards, including a minimum grade of "C" in all nursing courses to be eligible to graduate. Further, all students must be recommended by nursing faculty for promotion and eligibility to graduate.

These requirements were in place at the time Southwell claims she was entitled to graduate. However, the summary judgment evidence reflects that Southwell failed a required course, causing her to be unable to graduate. Incarnate Word's evidence consists of affidavits from Incarnate Word faculty members, all of whom were familiar with Southwell's performance while enrolled in the nursing program. Each affidavit states that Southwell was not recommended for eligibility to graduate by the nursing faculty.

The affidavit of Brenda Smith Jackson, the Director of the Department of Nursing, states that "Southwell failed to demonstrate competent and safe performance of required behaviors" in both her original clinical class and her independent assessment. Holly Cassells, Southwell's faculty advisor during the semester in question, testified that she could not recommend that Southwell graduate with a BSN degree from Incarnate Word "because she failed the required practicum in Nursing Leadership/Management." Jennifer Cook, the instructor of the Nursing Leadership/Management course, testified that Southwell "failed the practicum" after being given the opportunity to take an independent assessment. Maureen Reilly, Southwell's original supervisor in the Nursing Leadership/Management practicum, testified that Southwell "failed to demonstrate competent and safe performance of required behaviors," and that she "demonstrated unsafe and dangerous practices and behaviors during her participation in the practicum." Accordingly, Reilly ordered Southwell off of the hospital floor where the practicum was being held. At the time Southwell left the practicum, "she was failing." Catherine Murk was the instructor asked to perform an independent assessment of Southwell's performance after she was dismissed from the original Nursing Leadership/Management course. Murk "determined that Southwell did not pass the assessment based on her unsafe performance of required behaviors, which persisted during the five days of the assessment."

The notes kept by both Murk and Reilly during Southwell's clinical evaluations were also before the court. The notes are consistent with the determination that Southwell failed the practicum. There is numerous mention of unsafe and inefficient practices, as well as "lack of certain basic clinical skills." Both instructors noted the need for close supervision of Southwell, particularly in reference to the administration of medication.

Southwell devotes a substantial portion of her brief to contesting the validity of her grade. In the trial court, she offered her own affidavit testimony, whereby she claims that she did not fail the Nursing Leadership/Management course. In doing so, she attacks the method in which her grade was determined. She argues that Murk's daily evaluations indicate that she should have passed the practicum, and that either her passing grade was changed to failing or her passing grade was averaged with her failing grade in the original clinical. Southwell presented the expert testimony of Deannie French, who evaluated the depositions and affidavits of faculty members and concluded that Southwell was unfairly and unreliably assessed during the clinical. According to French, based upon Murk's indications of procedures satisfactorily performed by Southwell, Southwell should have received a grade of "83" in the practicum. Both Southwell and French conclude the independent assessment was performed under unfair and "grueling" conditions.

The issue we are faced with is whether Southwell passed the practicum and should have graduated. The evidence clearly reflects that she did not pass because she did not receive a passing grade. In arguing that she did, in fact, receive a passing grade, Southwell asks the courts to second-guess the process used to determine her grade. Such determination is in the professional discretion of the instructor who evaluated her and the nursing faculty as a whole. Regardless of Murk's daily assessments, as the instructor of the course and as a nurse, she was entitled to finally determine, after evaluating Southwell's performance for a week, whether Southwell had met the requirements of the course. Further, Southwell's grade is corroborated by Murk's daily written evaluation. Southwell's critique of the evaluation process and her attempts to reassess her grade are merely speculation and do not create a fact issue regarding whether she passed the practicum.

■ "When courts are asked to review the substance of which is genuinely an academic decision, they should show great respect for a faculty's professional judgment and 'may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Guinn v. Texas Christian University*, 818 S.W.2d 930,

933 (Tex.App.—Fort Worth 1991), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993) (citing *Regents on University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)). This is especially true in cases such as this, where the student is engaged in the study of a highly specialized field and the decision at issue involves the student's performance in a clinical atmosphere where the evaluation is necessarily subjective. Courts are not equipped to meddle in academic decision-making and evaluation of this type. Accordingly, once the exercise of professional judgment is demonstrated on the part of an educational institution, it is generally entitled to judgment as a matter of law. *Id.* (citing *Eiland,* 764 S.W.2d at 835).

■ The satisfactory completion of all degree requirements is, by definition, a condition precedent to the receipt of a degree. A condition precedent is an event that must occur before a right can accrue to enforce an obligation. *Cadle Co. v. Castle,* 913 S.W.2d 627, 636 (Tex.App.—Dallas 1995, writ denied). Because Southwell did not earn a "C" or better in a required course, she did not meet the requirements necessary to receive her nursing degree. Accordingly, Incarnate Word's obligation to award Southwell a degree did not accrue.

Incarnate Word further alleges that Southwell breached the contract she had with Incarnate Word when she failed to follow the proper procedure for retention when a failing grade is received. It is undisputed the Southwell did not apply for retention, as described in the Undergraduate Bulletin, when she learned she had failed the Nursing Leadership/Management practicum. In light of the above discussion, it is unnecessary to reach this issue. However, we note that, while it does appear that application for retention is necessary in order to retake a course or continue in the nursing program, Southwell is attempting to do neither of these. She is asking that she be awarded a degree. There is nothing in the Undergraduate Bulletin or the summary judgment evidence to indicate that application for retention is required in order to seek a degree one believes is being wrongly withheld. Accordingly, the issue of retention is inapplicable to this appeal.

## D. Deceptive Trade Practices Act

■ In her fifth issue on appeal, Southwell contends that she raised a fact issue regarding her contention that Incarnate Word violated the Deceptive Trade Practices Act when it represented to her that she could obtain a degree in nursing if she paid her tuition and earned passing grades in the required courses. The elements of a DTPA misrepresentation action are: 1) the plaintiff is a consumer, 2) the defendant engaged in false, misleading, or deceptive acts, and 3) these acts constituted a producing cause of the consumer's damages. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995); TEX. BUS. & COM.CODE ANN. § 17.50(a)(1).

■ In light of the above discussion regarding Southwell's breach of contract claims, Southwell has failed to demonstrate any misleading act on the part of Incarnate Word. Because Southwell did not achieve passing grades in all of her required courses by virtue of her failure in the Nursing Leadership/Management practicum, she has no standing to assert that Incarnate Word would not have awarded her a degree had she passed. To hold otherwise would be to allow a DTPA claim to be based upon a hypothetical.

■ Southwell also contends that her DTPA claim is based upon the fact that she was fraudulently induced into a contract regarding the independent assessment. However, we find nothing in her petition referencing the independent assessment.

Even if the independent assessment is at issue, there is no evidence that it constitutes a violation of the DTPA in any capacity. The only evidence regarding Southwell's decision to take the independent assessment is a letter to Southwell from Incarnate Word's Vice President of Academic Affairs. The letter states that the possibility of Southwell participating in an independent assessment of her nursing skills was being confirmed. It goes on to inform Southwell that if "the instructor determines that you are able to meet the

course objectives you will be allowed to graduate....If you fail to meet the course objectives, your only recourse will be to apply for retention in the Nursing Program...."

The evidence is undisputed that the instructor of the independent assessment determined that Southwell did not meet the course requirements. Therefore, as the letter accurately warned, Southwell was not permitted to graduate. Southwell contends that if she had been aware of the grading policy regarding the independent assessment, she would not have agreed to do it. Even if this is true, it does not give rise to a DTPA claim where the letter at issue does not even mention the grading policy to be used by the independent assessment instructor. Under these circumstances, Southwell has failed to raise a fact issue regarding deceptive action on the part of Incarnate Word.

## CONCLUSION

Because there is no question that Southwell did not pass the Nursing Leadership/Management practicum, she failed to satisfy the requirements necessary for the award of a nursing degree. Accordingly, an essential element of both her breach of contract and DTPA claims have been negated. The trial court did not, therefore, err in awarding Incarnate Word summary judgment on Southwell's claims. The judgment of the trial court is affirmed.