NO. 07-05-0224-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B


 

OCTOBER 11, 2005



______________________________



MARY L. THOMAS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;



NO. 4187; HONORABLE STEVEN EMMERT, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellant, Mary L. Thomas, appeals from her conviction for securing execution of
a document by deception $20,000 or more but less than $100,000. Sentence was
imposed on March 8, 2005. The reporter's record was filed on July 12, 2005 and the
clerk's record was filed on July 13, 2005. We will dismiss the appeal for want of
jurisdiction.

 Our appellate jurisdiction over a criminal appeal is triggered through a timely notice
of appeal. Olivo v. State, 918 S.W.2d 519, 522 (Tex.Crim.App. 1996). In the absence of
a notice of appeal timely filed in compliance with the requirements of Rule of Appellate
Procedure 26, a court of appeals does not obtain jurisdiction to address the merits of the
appeal in a criminal case, and can take no action other than to dismiss the appeal. Slaton
v. State, 981 S.W.2d 208, 210 (Tex.Crim.App. 1998). As applicable here, Rule of
Appellate Procedure 26.2(a) requires a notice of appeal in a criminal case be filed within
30 days after the day sentence is imposed or suspended in open court, or within 90 days
after imposition of the sentence if a timely motion for new trial is filed. Rule 26.3 allows for
an extension of time if the appellant files a notice of appeal with the trial court within 15
days after the deadline for filing the notice of appeal and files a motion for extension with
the appellate court. 

 Here, the record reflects that the court imposed sentence on appellant on March 8,
2005. A motion for new trial was timely filed on April 4, 2005, making appellant's notice
of appeal due June 6, 2005. The notice of appeal was filed June 7, 2005. A motion for
extension of time was filed with this court on June 22, 2005, more than 15 days after the
due date for the notice of appeal. Tex. R. App. P. 26.3. Appellant's failure to file a timely
notice of appeal or to meet the requirements for an extension under Rule 26.3 prevents
this court from having jurisdiction over his appeal. Slaton, 981 S.W.2d at 210. 



 Consequently, the appeal is dismissed for want of jurisdiction. 


 Mackey K. Hancock

 Justice


Do not publish. 



oxide poisoning. Fire department personnel tested the air
in his home and found high carbon monoxide levels near the furnace. On January 24,
2001, Caldwell asked Carrollton to repair the furnace. Although the Carrollton employee
initially told Caldwell that he did not detect any carbon monoxide, upon a later test, he
allegedly told Caldwell that he did find high levels. The furnace was replaced. Caldwell
told Carrollton to take the old furnace and determine what was wrong with it. Carrollton
took the furnace and inspected it but never found anything wrong with it. 

 Caldwell later filed suit claiming he had been exposed to carbon monoxide
poisoning since 1998. He asserted claims for negligence, breach of contract, DTPA
violations, negligent misrepresentation and/or fraud, and conversion (based on Carrollton
allegedly losing or destroying the furnace blower door after it was taken back to Carrollton's
shop). Carrollton filed a traditional motion for summary judgment based, among other
things, on lack of causation with respect to the negligence, breach of contract, and DTPA
claims. It later filed a motion for summary judgment on Caldwell's other claims. After a
hearing, the trial court took the motions under advisement until Caldwell had the
opportunity to depose the former owners of the home. After doing so, Caldwell designated
an additional expert witness and filed additional summary judgment evidence including a
new affidavit from its expert engineer. Carrollton objected to the new evidence and
designation of expert. The trial court sustained the objections and granted summary
judgment.

Issues 1, 2, & 3 - Negligence Claims


 In his first three issues, Caldwell contests whether Carrollton proved that 1) it owed
no duty to him to detect the carbon monoxide emissions or refrain from causing the furnace
to produce and emit carbon monoxide, 2) there were no carbon monoxide emissions in
May 2000 that it failed to detect, and 3) it did not cause the carbon monoxide emissions
in his home. The standard by which we review a summary judgment is that established
in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985). When, as
here, the trial court does not state the basis upon which summary judgment was granted, 
we must affirm the judgment unless Caldwell shows that it was error to base summary
judgment on any ground asserted in the motion. Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

 To prove a negligence cause of action, there must be a legal duty owed by one
person to another, a breach of that duty, and damages proximately caused by the breach. 
D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002). The only two occasions when
Carrollton could have done something to the furnace to cause it to emit carbon monoxide
or failed to detect that the furnace was emitting carbon monoxide was on May 31, 2000,
and on January 24, 2001. By January 22, 2001, Caldwell was already aware that carbon
monoxide was present in the home. Further, Caldwell's engineering expert concedes that
Carrollton did nothing to cause the furnace to emit carbon monoxide on January 24, 2001,
when it replaced the furnace. Therefore, we must examine the service call in May 2000
to determine whether liability may be premised upon that occurrence. Upon doing so, we
conclude that Caldwell failed to raise a fact issue regarding whether any act or omission
by Carrollton on that day caused his damages. This is so because Caldwell's engineering
expert, William Coltharp, testified by way of deposition that his own inspection of the
furnace failed to reveal any defect that would cause carbon monoxide poisoning. He
opined that the most likely way for carbon monoxide to have been released is due to "a
chronic leak of the blower door of the furnace [that] allowed the recirculation of products
of combustion throughout the Caldwell residence which caused the depletion of the oxygen
and increase, or production, of carbon monoxide caused by incomplete combustion." 
However, he conceded that there was not a lot of evidence to support that theory and he
was not very certain of it. (2) Moreover, he stated there was no evidence that Carrollton
altered part of the furnace in May 2000 or did anything to cause it to emit carbon monoxide
at that time. Furthermore, Coltharp stated he would not expect that Carrollton would
measure carbon monoxide on a routine furnace inspection and that even if Carrollton had
turned the furnace on that day, he had no opinion within a reasonable degree of scientific
certainty that the furnace was emitting carbon monoxide. (3) 

 The element of causation may not be based on mere conjecture, guess, or
speculation. IHS Cedars Treatment Ctr. of Desoto, Texas, Inc. v. Mason, 143 S.W.3d 794,
798-99 (Tex. 2004); Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003). 
Causation must be established by evidence of probative value. Leitch v. Hornsby, 935
S.W.2d 114, 119 (Tex. 1996). The failure to rule out other causes results in speculation
and conjecture and amounts to no evidence of causation. Hess v. McLean Feedyard, Inc.,
59 S.W.3d 679, 687 (Tex. App.-Amarillo 2000, pet. denied). Thus, someone's "best
guess" as to how an injury occurred fails to establish causation. See Loeser v. Sans One,
Inc., 187 S.W.3d 685, 687 (Tex. App.-Houston [14th Dist.] 2006, pet. denied). 

 Coltharp is only able to offer his "best guess" as to how carbon monoxide may have
been emitted from the furnace, and he acknowledges it is based on very little evidence. 
He is unable to say that the blower door was not properly secured on May 31. Moreover,
his affidavit statement that Carrollton should have detected the emissions on May 31,
2000, was qualified by the statement "[i]f the furnace . . . had been emitting dangerous or
injurious levels of carbon monoxide" since the time Caldwell had purchased the house. 
(Emphasis added.) Additionally, his statement that Carrollton should "not have caused a
malfunction through misuse during the May 2000 repairs" was qualified by the statement 
"as may have been the case." In light of his qualification to these statements and his
deposition testimony, we find that Caldwell failed to raise a fact issue with respect to
causation and overrule his first three issues.

Issues 4, 5, 6, & 7 - Other Causes of Action 


 In his next four issues, Caldwell claims error on the part of the trial court in granting
summary judgment with respect to his claims of breach of contract, DTPA violations, 
negligent misrepresentation, and conversion. We overrule them.

 Our determination that there is no genuine issue of material fact with respect to
causation also disposes of Caldwell's claims for breach of contract and breach of the
DTPA. See Doe v. Boys Clubs, 907 S.W.2d 472, 478 (Tex. 1995) (holding that the
elements of a cause of action for breach of the DTPA are 1) the plaintiff is a consumer, 2)
the defendant engaged in false, misleading, or deceptive acts, and 3) those acts
constituted a producing cause of the consumer's damages); Southwell v. University of the
Incarnate Word, 974 S.W.2d 351, 354-55 (Tex. App.-San Antonio 1998, pet. denied)
(holding that the elements of a cause of action for breach of contract are 1) the existence
of a valid contract, 2) the plaintiff performed or tendered performance, 3) the defendant
breached the contract, and 4) the plaintiff was damaged as a result). 

 Likewise, the claims of negligent misrepresentation and/or fraud require proof of
proximate cause. Larsen v. Carlene Langford & Assocs., 41 S.W.3d 245, 249 (Tex. App.-
Waco 2001, pet. denied). Caldwell cites to his own affidavit to establish the
misrepresentations made to him. In it, he contends that Carrollton told him everything
looked fine and that the furnace was safe at the time of its inspection on May 31, 2000.
However, for the same reasons discussed with respect to Caldwell's first three issues, the
evidence does not show a genuine issue of material fact with respect to the element of
proximate cause. (4) In other words, even if there was some misrepresentation made
regarding the safety of the furnace on May 31st, there is no evidence that it caused the
purported harm experienced later. 

 Finally, as to the claim of conversion of personal property, the elements to be shown
are 1) the plaintiff owned, possessed, or had the right of immediate possession of the
property, 2) the defendant wrongfully exercised dominion or control over the property to the
exclusion of and inconsistent with the plaintiff's rights, 3) the plaintiff demanded return of
the property, and 4) the defendant failed to return it. Ojeda v. Wal-Mart Stores, Inc., 956
S.W.2d 704, 707 (Tex. App.-San Antonio 1997, pet. denied). Caldwell contends that
Carrollton converted his property by keeping, destroying, or losing the furnace blower door
and possibly other unspecified pieces of the furnace. However, Caldwell states in his
affidavit that he asked Carrollton to take the furnace, examine it, and identify what was
wrong with it. He does not contend that Carrollton refused to relinquish the furnace when
requested to do so. In fact, there is evidence that Caldwell had another attorney and/or
his agent examine the furnace. Furthermore, the evidence cited by Caldwell does not
show whether the blower door was with the furnace at the time Carrollton took possession
and whether it was with the furnace at the time Carrollton relinquished possession. 
Therefore, the trial court did not err in granting summary judgment.

Issues 8 & 9 - Spoliation of Evidence


 Via his eighth and ninth issues, Caldwell contends he was entitled to a presumption
that the blower door would have supported his case if it had been available. We overrule
the issues.

 Spoliation is the destruction of evidence. The failure to produce evidence within a
party's control raises a presumption that the evidence would be unfavorable to the party
that failed to produce it. Brewer v. Dowling, 862 S.W.2d 156, 159 (Tex. App.-Fort Worth
1993, writ denied). When a party raises the issue of spoliation in response to a motion for
summary judgment, we review the trial court's rejection of it for abuse of discretion. 
Aguirre v. South Tex. Blood & Tissue Ctr., 2 S.W.3d 454, 457 (Tex. App.-San Antonio
1999, pet. denied). 

 Carrollton argues that the issue was waived because Caldwell failed to raise the
issue to the trial court. In response, Caldwell contends it raised the issue in its response
to Carrollton's motion for summary judgment and that it was ruled on when the trial court
granted the motion for summary judgment. 

 Assuming that the issue was preserved, the trial court could have found that
Caldwell failed to satisfy at least one of the prerequisites to spoliation. For instance, the
theory arises only if 1) there is a duty to preserve the evidence, 2) the alleged spoliation
breached that duty either intentionally or negligently, and 3) the spoliation prejudiced the
non-spoliator. Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654, 667-68 (Tex. App.-
Houston [1st Dist.] 1998, no pet.). If the blower door was the source of the leak, as
Caldwell suggests, his expert stated that there was no evidence that Carrollton did anything
to the furnace on May 31, 2000, to cause it to leak carbon monoxide or that there was
carbon monoxide present that day that Carrollton should have discovered. Therefore, we
cannot say that Caldwell's case against Carrollton was prejudiced by any loss or
destruction of evidence by Carrollton assuming that such occurred. 

Issues 10, 11, 12, 13, 14, & 15 - Objections to Evidence


 In his next five issues, Caldwell challenges the trial court's sustaining of various
objections made by Carrollton to the summary judgment evidence. Carrollton filed
objections with respect to: 1) the affidavits of Coltharp and David George Penney (in which
they related what Caldwell was told by unidentified fire department personnel as to the
source of the carbon monoxide) on the basis they contained hearsay and could not be
readily contradicted, 2) Coltharp's opinions as to whether there were defects or leaks in the
blower door since they were conclusory, speculative, and based on hearsay uttered by fire
department personnel, 3) evidence regarding whether the blower door was defective or
leaking since its undue prejudice outweighed its probative value under Rule 403 of the
Rules of Evidence, 4) the affidavits of Penney in their entirety because papers and
documents referred to in the affidavits were not attached to them, they were founded on
hearsay, and various allegations in them were conclusory, 5) the deposition transcript of 
Carrollton's engineering expert, Johnnie Spruiell, because it is not a certified copy, and 6)
to one exhibit because it is not properly authenticated. The trial court order stated that it
sustained Carrollton's objections to the summary judgment evidence. (5) We review the trial
court's ruling for abuse of discretion. National Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d
525, 527 (Tex. 2000). 

 A decision to exclude summary judgment evidence will not result in reversal unless
the appellant was harmed. Steinkemp v. Caremark, 3 S.W.3d 191, 197 (Tex. App.-El
Paso 1999, pet. denied). Even if we assume for purposes of our analysis that the source
of the carbon monoxide poisoning was the furnace and that the furnace had a defect in the
blower door since 1998, there is still no genuine issue of material fact with respect to
Carrollton being the cause of Caldwell's injuries. That is so because there is no evidence
that Carrollton caused any defect in the blower door or that it should have detected the
defect or the presence of carbon monoxide on May 31, 2000. Therefore, the trial court
would still have had a basis upon which to grant summary judgment even if the evidence
had been admitted.

Issue 16 - Newly Discovered Evidence


 Finally, Caldwell complains of the trial court's failure to consider its supplemental
response to the motion for summary judgment that was filed after the summary judgment
hearing. Although we do not have a record of the summary judgment hearing before us,
the parties agree that at that hearing held on January 20, 2005, Caldwell was granted
permission to take the depositions of William and Victoria Mueller (the sellers of the house
to Caldwell) within the next thirty days prior to the trial court's ruling. Yet, on March 4,
2005, Caldwell filed supplemental evidence which included an affidavit from a new expert
witness and a new affidavit from Coltharp. Caldwell also sought leave to designate
Michael F. Hanzlick as a new expert witness. 

 When nothing in the record indicates leave was obtained to submit additional
evidence after the hearing, it is presumed that the trial court did not consider the late-filed
evidence. Benchmark Bank v. Crowder, 919 S.W.2d 657, 663 (Tex. 1996). Even if the
trial court gave permission for Caldwell to depose additional lay witnesses, there is nothing
in the record to show that it granted leave for the submission of new expert affidavits or for
the designation of an additional expert. 

 A trial court should permit late-filed summary judgment evidence when there is good
cause and no undue prejudice. Wheeler v. Green, 157 S.W.3d 439, 442 (Tex. 2005). 
Good cause exists when a failure was the result of accident or mistake and not intentional
or the result of conscious indifference. Id. Undue prejudice depends on whether allowing
late submission will delay trial or significantly hamper the opposing party's ability to prepare
for it. Id. at 443.

 In his submission of supplemental evidence, Caldwell states that he learned for the
first time in November 2004 that Carrollton's expert, Johnnie Spruiell, had been told by 
Mueller that the furnace door was difficult to remove and replace and that he used a
screwdriver to disengage the "hold-in" tabs. After that, Coltharp re-inspected the furnace
and found several rusted markings, including bent areas of the furnace frame. When
Mueller stated in his deposition taken after the hearing on the motion for summary
judgment that he did not recall how the door fit and did not know if the markings were
made by a screwdriver, Caldwell hired an expert to explain the markings and asked
Coltharp to supplement his previous opinions. 

 We note that the lawsuit was filed on January 21, 2003, and the motion for summary
judgment was not filed until November 9, 2004. The hearing on that motion was held on
January 20, 2005. Thus, there had been ample time for discovery and investigation of the
matters in question. Indeed, there had been a notation on an invoice of the company that
had serviced the furnace in 1998 indicating that the door panel had been ajar. Caldwell
fails to explain why he had not contacted the Muellers earlier to investigate the notation or
why Coltharp, who examined the furnace, did not make note of the markings and bent
areas on the furnace prior to the information from Mueller, given the aforementioned
notation. 

 Nor can we forget that the summary judgment hearing constituted a summary trial. 
In other words, if it were granted as Carrollton hoped for, there would be no further
proceedings. So, to wait until after the hearing to tender additional evidence would be
tantamount to waiting until after trial to present more evidence. In either case, the
opponent runs the risk of having the trial court act on what is presented before he can
respond to the new material. That is potential harm or prejudice that must be assessed
in determining whether the trial court erred in not granting leave to supplement. 

 Because of the time during which the lawsuit had been pending and the availability
of the furnace for inspection by Coltharp prior to the summary judgment hearing, we find
no abuse of discretion on the part of the trial court in refusing to consider the "new"
evidence. See El Dorado Motors, Inc. v. Koch, 168 S.W.3d 360, 370 (Tex. App.-Dallas
2005, no pet.) (finding that there was no abuse of discretion in denying a motion for leave
to file supplemental evidence six weeks after the summary judgment hearing when the
witness had been previously deposed on all the issues and the testimony was available at
the time he was deposed). 

 Having overruled all of Caldwell's issues, we affirm the judgment of the trial court.


 Per Curiam 

 

 
1. Senior Justice Reavis did not participate in this opinion.
2. Coltharp testified that the kill switch would prevent the furnace from operating if the blower door was
improperly installed but that when he tested the switch, it operated without malfunction.
3. Caldwell contends that Coltharp merely stated there was probably no carbon monoxide that day
because the furnace was not running in May. However, he also testified that under his theory of the most
likely way carbon monoxide escaped, it could take 10-15 hours after the furnace is turned on for the carbon
monoxide to build up. 
4. Caldwell contends that Carrollton did not attack the causation element of his fraud or negligent
misrepresentation claims. However, in Carrollton's "Supplemental Reply to Plaintiff's 'Comprehensive'
Response to its Motion for Summary Judgment," Carrollton states that Caldwell cannot establish as a matter
of law that it caused his injuries and therefore, "all of his claims based upon Carrollton's alleged conduct on
May 31, 2000 must fail." 
5. The parties also address whether it was error for the trial court to sustain objections to Caldwell's
Third Amended Petition. However, the order says only that the objections to the summary judgment evidence
were sustained. Caldwell does not cite us to any other order in the record where the court sustained
objections to the petition.