NO. 07-05-0241-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 22, 2007
_____

DANIEL GENE CALDWELL,

Appellant

v.

CARROLLTON AIR CONDITIONING, INC.,

Appellee
_____

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY;

NO. 2003-20207-158; HON. JAKE COLLIER, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., CAMPBELL, J., and REAVIS,[1] S.J.

Appellant Daniel Gene Caldwell (Caldwell) appeals from a take-nothing summary judgment granted in favor of appellee Carrollton Air Conditioning, Inc. (Carrollton). Caldwell sued Carrollton for injuries allegedly received from carbon monoxide poisoning as a result of a defective furnace serviced by Carrollton. Caldwell raises sixteen issues on appeal related to 1) the propriety of granting summary judgment with respect to his claims

_____

[1]Senior Justice Reavis did not participate in this opinion.

of negligence, DTPA violations, breach of contract, negligent misrepresentation, and conversion, 2) whether he should have been granted a presumption of spoliation of evidence, 3) whether the trial court erred in sustaining objections to his summary judgment evidence, and 4) whether the trial court erred in refusing to consider his supplemental/new summary judgment evidence submitted after the summary judgment hearing but before the court's ruling. We affirm the summary judgment.

### *Background*

Caldwell purchased his home in 1998 at which time he had a home inspection done. He was informed by the home inspector that the furnace was burning with a yellow flame and should be further inspected. However, the sellers represented the furnace had passed an inspection a week before and, based on that explanation, no additional inspection was performed.

On May 31, 2000, Caldwell hired Carrollton to replace the evaporator coil on his air conditioner. To do so, Carrollton had to move the furnace. Upon re-connection of the furnace, Caldwell asked Carrollton to make sure the furnace had not been damaged by being "roughly" moved. According to Caldwell, Carrollton took the furnace apart, cleaned the burners, checked the heat exchanger for cracks and checked the color of the flame. Caldwell was told that the furnace was working fine.

On January 22, 2001, Caldwell became ill and was transported to the hospital where he was treated for carbon monoxide poisoning. Fire department personnel tested the air in his home and found high carbon monoxide levels near the furnace. On January 24, 2001, Caldwell asked Carrollton to repair the furnace. Although the Carrollton employee initially told Caldwell that he did not detect any carbon monoxide, upon a later test, he

2

allegedly told Caldwell that he did find high levels. The furnace was replaced. Caldwell told Carrollton to take the old furnace and determine what was wrong with it. Carrollton took the furnace and inspected it but never found anything wrong with it.

Caldwell later filed suit claiming he had been exposed to carbon monoxide poisoning since 1998. He asserted claims for negligence, breach of contract, DTPA violations, negligent misrepresentation and/or fraud, and conversion (based on Carrollton allegedly losing or destroying the furnace blower door after it was taken back to Carrollton's shop). Carrollton filed a traditional motion for summary judgment based, among other things, on lack of causation with respect to the negligence, breach of contract, and DTPA claims. It later filed a motion for summary judgment on Caldwell's other claims. After a hearing, the trial court took the motions under advisement until Caldwell had the opportunity to depose the former owners of the home. After doing so, Caldwell designated an additional expert witness and filed additional summary judgment evidence including a new affidavit from its expert engineer. Carrollton objected to the new evidence and designation of expert. The trial court sustained the objections and granted summary judgment.

### Issues 1, 2, & 3 - Negligence Claims

In his first three issues, Caldwell contests whether Carrollton proved that 1) it owed no duty to him to detect the carbon monoxide emissions or refrain from causing the furnace to produce and emit carbon monoxide, 2) there were no carbon monoxide emissions in May 2000 that it failed to detect, and 3) it did not cause the carbon monoxide emissions in his home. The standard by which we review a summary judgment is that established in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985). When, as

3

here, the trial court does not state the basis upon which summary judgment was granted, we must affirm the judgment unless Caldwell shows that it was error to base summary judgment on any ground asserted in the motion. *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

To prove a negligence cause of action, there must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach. *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex. 2002). The only two occasions when Carrollton could have done something to the furnace to cause it to emit carbon monoxide or failed to detect that the furnace was emitting carbon monoxide was on May 31, 2000, and on January 24, 2001. By January 22, 2001, Caldwell was already aware that carbon monoxide was present in the home. Further, Caldwell's engineering expert concedes that Carrollton did nothing to cause the furnace to emit carbon monoxide on January 24, 2001, when it replaced the furnace. Therefore, we must examine the service call in May 2000 to determine whether liability may be premised upon that occurrence. Upon doing so, we conclude that Caldwell failed to raise a fact issue regarding whether any act or omission by Carrollton on that day caused his damages. This is so because Caldwell's engineering expert, William Coltharp, testified by way of deposition that his own inspection of the furnace failed to reveal any defect that would cause carbon monoxide poisoning. He opined that the most likely way for carbon monoxide to have been released is due to "a chronic leak of the blower door of the furnace [that] allowed the recirculation of products of combustion throughout the Caldwell residence which caused the depletion of the oxygen and increase, or production, of carbon monoxide caused by incomplete combustion." However, he conceded that there was not a lot of evidence to support that theory and he

4

was not very certain of it.[2]  Moreover, he stated there was no evidence that Carrollton altered part of the furnace in May 2000 or did anything to cause it to emit carbon monoxide at that time.  Furthermore, Coltharp stated he would not expect that Carrollton would measure carbon monoxide on a routine furnace inspection and that even if Carrollton had turned the furnace on that day, he had no opinion within a reasonable degree of scientific certainty that the furnace was emitting carbon monoxide.[3]

The element of causation may not be based on mere conjecture, guess, or speculation. *IHS Cedars Treatment Ctr. of Desoto, Texas, Inc. v. Mason,* 143 S.W.3d 794, 798-99 (Tex. 2004); *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex. 2003). Causation must be established by evidence of probative value.  *Leitch v. Hornsby,* 935 S.W.2d 114, 119 (Tex. 1996).  The failure to rule out other causes results in speculation and conjecture and amounts to no evidence of causation. *Hess v. McLean Feedyard, Inc.,* 59 S.W.3d 679, 687 (Tex. App.–Amarillo 2000, pet. denied).  Thus, someone's "best guess" as to how an injury occurred fails to establish causation. *See Loeser v. Sans One, Inc.,* 187 S.W.3d 685, 687 (Tex. App.–Houston [14th Dist.] 2006, pet. denied).

Coltharp is only able to offer his "best guess" as to how carbon monoxide may have been emitted from the furnace, and he acknowledges it is based on very little evidence. He is unable to say that the blower door was not properly secured on May 31.  Moreover, his affidavit statement that Carrollton should have detected the emissions on May 31,

[2]Coltharp testified that the kill switch would prevent the furnace from operating if the blower door was improperly installed but that when he tested the switch, it operated without malfunction.

[3]Caldwell contends that Coltharp merely stated there was probably no carbon monoxide that day because the furnace was not running in May.  However, he also testified that under his theory of the most likely way carbon monoxide escaped, it could take 10-15 hours after the furnace is turned on for the carbon monoxide to build up.

2000, was qualified by the statement "*[i]f* the furnace . . . had been emitting dangerous or injurious levels of carbon monoxide" since the time Caldwell had purchased the house. (Emphasis added.) Additionally, his statement that Carrollton should "not have caused a malfunction through misuse during the May 2000 repairs" was qualified by the statement "as *may* have been the case." In light of his qualification to these statements and his deposition testimony, we find that Caldwell failed to raise a fact issue with respect to causation and overrule his first three issues.

### Issues 4, 5, 6, & 7 - Other Causes of Action

In his next four issues, Caldwell claims error on the part of the trial court in granting summary judgment with respect to his claims of breach of contract, DTPA violations, negligent misrepresentation, and conversion. We overrule them.

Our determination that there is no genuine issue of material fact with respect to causation also disposes of Caldwell's claims for breach of contract and breach of the DTPA. *See Doe v. Boys Clubs,* 907 S.W.2d 472, 478 (Tex. 1995) (holding that the elements of a cause of action for breach of the DTPA are 1) the plaintiff is a consumer, 2) the defendant engaged in false, misleading, or deceptive acts, and 3) those acts constituted a producing cause of the consumer's damages); *Southwell v. University of the Incarnate Word,* 974 S.W.2d 351, 354-55 (Tex. App.–San Antonio 1998, pet. denied) (holding that the elements of a cause of action for breach of contract are 1) the existence of a valid contract, 2) the plaintiff performed or tendered performance, 3) the defendant breached the contract, and 4) the plaintiff was damaged as a result).

6

Likewise, the claims of negligent misrepresentation and/or fraud require proof of proximate cause. *Larsen v. Carlene Langford & Assocs.,* 41 S.W.3d 245, 249 (Tex. App.– Waco 2001, pet. denied). Caldwell cites to his own affidavit to establish the misrepresentations made to him. In it, he contends that Carrollton told him everything looked fine and that the furnace was safe at the time of its inspection on May 31, 2000. However, for the same reasons discussed with respect to Caldwell's first three issues, the evidence does not show a genuine issue of material fact with respect to the element of proximate cause.[4] In other words, even if there was some misrepresentation made regarding the safety of the furnace on May 31st, there is no evidence that it caused the purported harm experienced later.

Finally, as to the claim of conversion of personal property, the elements to be shown are 1) the plaintiff owned, possessed, or had the right of immediate possession of the property, 2) the defendant wrongfully exercised dominion or control over the property to the exclusion of and inconsistent with the plaintiff's rights, 3) the plaintiff demanded return of the property, and 4) the defendant failed to return it. *Ojeda v. Wal-Mart Stores, Inc.,* 956 S.W.2d 704, 707 (Tex. App.–San Antonio 1997, pet. denied). Caldwell contends that Carrollton converted his property by keeping, destroying, or losing the furnace blower door and possibly other unspecified pieces of the furnace. However, Caldwell states in his affidavit that he asked Carrollton to take the furnace, examine it, and identify what was wrong with it. He does not contend that Carrollton refused to relinquish the furnace when

---

[4]Caldwell contends that Carrollton did not attack the causation element of his fraud or negligent misrepresentation claims. However, in Carrollton's "Supplemental Reply to Plaintiff's 'Comprehensive' Response to its Motion for Summary Judgment," Carrollton states that Caldwell cannot establish as a matter of law that it caused his injuries and therefore, "all of his claims based upon Carrollton's alleged conduct on May 31, 2000 must fail."

requested to do so. In fact, there is evidence that Caldwell had another attorney and/or his agent examine the furnace. Furthermore, the evidence cited by Caldwell does not show whether the blower door was with the furnace at the time Carrollton took possession and whether it was with the furnace at the time Carrollton relinquished possession. Therefore, the trial court did not err in granting summary judgment.

### Issues 8 & 9 - Spoliation of Evidence

Via his eighth and ninth issues, Caldwell contends he was entitled to a presumption that the blower door would have supported his case if it had been available. We overrule the issues.

Spoliation is the destruction of evidence. The failure to produce evidence within a party's control raises a presumption that the evidence would be unfavorable to the party that failed to produce it. *Brewer v. Dowling,* 862 S.W.2d 156, 159 (Tex. App.–Fort Worth 1993, writ denied). When a party raises the issue of spoliation in response to a motion for summary judgment, we review the trial court's rejection of it for abuse of discretion. *Aguirre v. South Tex. Blood & Tissue Ctr.,* 2 S.W.3d 454, 457 (Tex. App.–San Antonio 1999, pet. denied).

Carrollton argues that the issue was waived because Caldwell failed to raise the issue to the trial court. In response, Caldwell contends it raised the issue in its response to Carrollton's motion for summary judgment and that it was ruled on when the trial court granted the motion for summary judgment.

Assuming that the issue was preserved, the trial court could have found that Caldwell failed to satisfy at least one of the prerequisites to spoliation. For instance, the

8

theory arises only if 1) there is a duty to preserve the evidence, 2) the alleged spoliation breached that duty either intentionally or negligently, and 3) the spoliation prejudiced the non-spoliator. *Offshore Pipelines, Inc. v. Schooley,* 984 S.W.2d 654, 667-68 (Tex. App.– Houston [1st Dist.] 1998, no pet.). If the blower door was the source of the leak, as Caldwell suggests, his expert stated that there was no evidence that Carrollton did anything to the furnace on May 31, 2000, to cause it to leak carbon monoxide or that there was carbon monoxide present that day that Carrollton should have discovered. Therefore, we cannot say that Caldwell's case against Carrollton was prejudiced by any loss or destruction of evidence by Carrollton assuming that such occurred.

### *Issues 10, 11, 12, 13, 14, & 15 - Objections to Evidence*

In his next five issues, Caldwell challenges the trial court's sustaining of various objections made by Carrollton to the summary judgment evidence. Carrollton filed objections with respect to: 1) the affidavits of Coltharp and David George Penney (in which they related what Caldwell was told by unidentified fire department personnel as to the source of the carbon monoxide) on the basis they contained hearsay and could not be readily contradicted, 2) Coltharp's opinions as to whether there were defects or leaks in the blower door since they were conclusory, speculative, and based on hearsay uttered by fire department personnel, 3) evidence regarding whether the blower door was defective or leaking since its undue prejudice outweighed its probative value under Rule 403 of the Rules of Evidence, 4) the affidavits of Penney in their entirety because papers and documents referred to in the affidavits were not attached to them, they were founded on hearsay, and various allegations in them were conclusory, 5) the deposition transcript of

9

Carrollton's engineering expert, Johnnie Spruiell, because it is not a certified copy, and 6) to one exhibit because it is not properly authenticated. The trial court order stated that it sustained Carrollton's objections to the summary judgment evidence.[5] We review the trial court's ruling for abuse of discretion. *National Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex. 2000).

A decision to exclude summary judgment evidence will not result in reversal unless the appellant was harmed. *Steinkemp v. Caremark,* 3 S.W.3d 191, 197 (Tex. App.–El Paso 1999, pet. denied). Even if we assume for purposes of our analysis that the source of the carbon monoxide poisoning was the furnace and that the furnace had a defect in the blower door since 1998, there is still no genuine issue of material fact with respect to Carrollton being the cause of Caldwell's injuries. That is so because there is no evidence that Carrollton caused any defect in the blower door or that it should have detected the defect or the presence of carbon monoxide on May 31, 2000. Therefore, the trial court would still have had a basis upon which to grant summary judgment even if the evidence had been admitted.

### Issue 16 - Newly Discovered Evidence

Finally, Caldwell complains of the trial court's failure to consider its supplemental response to the motion for summary judgment that was filed after the summary judgment hearing. Although we do not have a record of the summary judgment hearing before us, the parties agree that at that hearing held on January 20, 2005, Caldwell was granted

---

[5]The parties also address whether it was error for the trial court to sustain objections to Caldwell's Third Amended Petition. However, the order says only that the objections to the summary judgment evidence were sustained. Caldwell does not cite us to any other order in the record where the court sustained objections to the petition.

permission to take the depositions of William and Victoria Mueller (the sellers of the house to Caldwell) within the next thirty days prior to the trial court's ruling. Yet, on March 4, 2005, Caldwell filed supplemental evidence which included an affidavit from a new expert witness and a new affidavit from Coltharp. Caldwell also sought leave to designate Michael F. Hanzlick as a new expert witness.

When nothing in the record indicates leave was obtained to submit additional evidence after the hearing, it is presumed that the trial court did not consider the late-filed evidence. *Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex. 1996). Even if the trial court gave permission for Caldwell to depose additional lay witnesses, there is nothing in the record to show that it granted leave for the submission of new expert affidavits or for the designation of an additional expert.

A trial court should permit late-filed summary judgment evidence when there is good cause and no undue prejudice. *Wheeler v. Green,* 157 S.W.3d 439, 442 (Tex. 2005). Good cause exists when a failure was the result of accident or mistake and not intentional or the result of conscious indifference. *Id.* Undue prejudice depends on whether allowing late submission will delay trial or significantly hamper the opposing party's ability to prepare for it. *Id.* at 443.

In his submission of supplemental evidence, Caldwell states that he learned for the first time in November 2004 that Carrollton's expert, Johnnie Spruiell, had been told by Mueller that the furnace door was difficult to remove and replace and that he used a screwdriver to disengage the "hold-in" tabs. After that, Coltharp re-inspected the furnace and found several rusted markings, including bent areas of the furnace frame. When

11

Mueller stated in his deposition taken after the hearing on the motion for summary judgment that he did not recall how the door fit and did not know if the markings were made by a screwdriver, Caldwell hired an expert to explain the markings and asked Coltharp to supplement his previous opinions.

We note that the lawsuit was filed on January 21, 2003, and the motion for summary judgment was not filed until November 9, 2004. The hearing on that motion was held on January 20, 2005. Thus, there had been ample time for discovery and investigation of the matters in question. Indeed, there had been a notation on an invoice of the company that had serviced the furnace in 1998 indicating that the door panel had been ajar. Caldwell fails to explain why he had not contacted the Muellers earlier to investigate the notation or why Coltharp, who examined the furnace, did not make note of the markings and bent areas on the furnace prior to the information from Mueller, given the aforementioned notation.

Nor can we forget that the summary judgment hearing constituted a summary trial. In other words, if it were granted as Carrollton hoped for, there would be no further proceedings. So, to wait until after the hearing to tender additional evidence would be tantamount to waiting until after trial to present more evidence. In either case, the opponent runs the risk of having the trial court act on what is presented before he can respond to the new material. That is potential harm or prejudice that must be assessed in determining whether the trial court erred in not granting leave to supplement.

Because of the time during which the lawsuit had been pending and the availability of the furnace for inspection by Coltharp prior to the summary judgment hearing, we find no abuse of discretion on the part of the trial court in refusing to consider the "new"

12

evidence.  *See El Dorado Motors, Inc. v. Koch,* 168 S.W.3d 360, 370 (Tex. App.–Dallas 2005, no pet.) (finding that there was no abuse of discretion in denying a motion for leave to file supplemental evidence six weeks after the summary judgment hearing when the witness had been previously deposed on all the issues and the testimony was available at the time he was deposed).

Having overruled all of Caldwell's issues, we affirm the judgment of the trial court.


Per Curiam