448

Srisuda MAHAVONGSANAN,
Plaintiff-Appellee
Cross-Appellant,

v.

Roy M. HALL, Individually and in his capacity as Dean, School of Education, Georgia State University in Atlanta, Georgia, et al., etc., Defendants-Appellants Cross-Appellees.

No. 75–3146
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 26, 1976.

Rehearing and Rehearing En Banc
Denied April 27, 1976.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Arthur K. Bolton, Atty. Gen., J. David Dyson, , Robert S. Stubbs, II, Don A. Langham, Michael J. Bowers, Asst. Attys. Gen., Atlanta, Ga., for defendants-appellants cross-appellees.

John J. Goger, David E. Krischer, Atlanta, Ga., for plaintiff-appellee cross-appellant.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge:

Srisuda Mahavongsanan sued the Dean of the School of Education of Georgia State University, various professors, and the University's Board of Regents, asserting a deprivation of her civil rights for their arbitrary and capricious refusal to award her a master's degree in education. She claimed denial of procedural and substantive due process, and breach of contract. The district court permanently enjoined the defendants from withholding the degree plaintiff sought. We reverse.

The defendants contend that the district court erred in applying due process standards to purely academic prerogatives; that the injunction constitutes an unwarranted, as well as unprecedented, judicial intrusion into matters of traditional educational decision making which are beyond the scope of judicial review. They submit that there is no right to judicial review of university decisions concerning scholarship and academic performance, unless they are shown to be clearly arbitrary or capricious.

■ Subsequent to the judgment of the lower court, appellants awarded appellee the degree for which she had matriculated, notwithstanding their academic determination that appellant had not met the university's qualifications for the degree. Appellees now point to this *fait accompli* in light of *Defunis v. Odegaard*, 1974, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164, as compelling dismissal of the instant case as moot. Appellants respond that unlike *Defunis*, their academic integrity continues to be jeopardized in the existence of the court-ordered grant of a diploma because the diploma constitutes public endorsement of competence and achievement which was unmerited.

We agree with appellants that this case is not moot. While we recognize "the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.' *North Carolina v. Rice*, 1971, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413, 415." *Defunis, supra* at 316, 94 S.Ct. at 1705, 40 L.Ed.2d at 168, in the instant case it has been clearly established that the legal interests of the litigants continue to be adverse. The decision of this court will have a concrete effect upon the rights of the parties. Appellants have made clear that, if granted relief, they will revoke the degree unwillingly awarded appellee. Moreover, the appellants have a further interest, to eliminate an ongoing stigma of erosion of their academic certification process. The case is not moot.

■ The concern expressed by the appellants for their academic interest is well taken. The district court's grant of relief is based on a confusion of the court's power to review *disciplinary* actions by educational institutions on the one hand, and *academic* decisions on the other hand. This Court has been in the vanguard of the legal development of due process protections for students ever since *Dixon v. Alabama State Board of Education*, 5 Cir. 1961, 294 F.2d 150, *cert. denied* 1961, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193. However, the due process requirements of notice and hearing developed in the *Dixon* line of cases have been carefully limited to disciplinary decisions. When we explained that "the student at the tax supported institution cannot be arbitrarily disciplined without the benefit of the ordinary, well recognized principles of fair play", we went on to declare that "[w]e know of no case which holds that colleges and universities

are subject to the supervision or review of the courts in the uniform application of their academic standards. Indeed, *Dixon* infers to the contrary." *Wright v. Texas Southern University*, 5 Cir. 1968, 392 F.2d 728, 729. Misconduct and failure to attain a standard of scholarship cannot be equated. A hearing may be required to determine charges of misconduct, but a hearing may be useless or harmful in finding out the truth concerning scholarship. There is a clear dichotomy between a student's due process rights in disciplinary dismissals and in academic dismissals. *Gaspar v. Bruton*, 10 Cir. 1975, 513 F.2d 843, 850–51; *Mustell v. Rose*, 1968, 282 Ala. 358, 211 So.2d 489, 498, *cert. denied* 1968, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272; *Militana v. University of Miami*, Fla. App.1970, 236 So.2d 162, *cert. denied* 1971, 401 U.S. 962, 91 S.Ct. 970, 28 L.Ed.2d 245.

■ A review of the record plainly shows that the university's decision to require the comprehensive examination was a reasonable academic regulation within the expertise of the university's faculty. Moreover, appellee received timely notice that she would be required to take the comprehensive examination. This is underscored by the fact that the university gave her ample notice to prepare a second time for taking the test. When appellee failed the second examination as well, the university afforded her a further reasonable opportunity to complete additional course work in lieu of the comprehensive examination. The appellee nonetheless chose to spurn the university's efforts to tailor a special program to resolve her dilemma. Instead of pursuing her grievance through the administrative remedies provided for in the By-Laws of the Board of Regents of the University, she brought suit. She was denied neither procedural nor substantive due process.

■ Appellee finally contends that the university breached its contract with her. We find this to be without merit because of the wide latitude and discretion af-

forded by the courts to educational institutions in framing their academic degree requirements. *Militana, supra.* Implicit in the student's contract with the university upon matriculation is the student's agreement to comply with the university's rules and regulations, which the university clearly is entitled to modify so as to properly exercise its educational responsibility. *See, Foley v. Benedict*, 1932, 122 Tex. 193, 55 S.W.2d 805, 810. The appellee's claim of a binding, absolute unchangeable contract is particularly anomalous in the context of training professional teachers in post graduate level work.

Reversed.