The UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, School of Nursing and Roger Bulger, and Arlowayne Swort, Appellants,

v.

Joy Ann BABB, Appellee.

No. 01–82–0238–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 18, 1982.

Rehearing Denied Feb. 16, 1982.

Mark White, Jerry D. Cain, Austin, for appellant.

Michael LeJune, Houston, for appellee.

Before PRICE, WARREN and DOYLE, JJ.

## OPINION

PRICE, Justice.

This appeal is from an order granting Joy Ann Babb, appellee, a temporary injunction permitting her to resume classes and to complete her degree requirements without any interference from the University of Texas School of Nursing.

Appellee entered the Nursing school in Houston, Texas, in January 1979, under the admission requirements of the school's

1978–1979 catalog. At that time the school was conducting classes under the semester system. The pertinent provisions of that catalog are:

If at the end of any long-session semester or summer session, a student's grade-point average for the total number of hours undertaken in the School of Nursing falls below 2.0 he will be placed on scholastic probation.

If a student repeats a course which he has failed in the School of Nursing, his official grade is the last one made.

A student may obtain a degree from the School of Nursing according to the requirements in the catalog under which he enters the School, or the catalog governing any subsequent year in which he is registered in the School, provided that he completes the work for the degree within six years of the date of the catalog. The student will submit to the Dean a written request for readmission. The request will be reviewed by the Dean, Chairperson of the Undergraduate Curriculum Council, and the faculty of the course to which the student is requesting re-admission. An interview may be requested. The Dean or her delegate, will advise the student in writing of the decision.

Prior to the end of the fall term, 1979, appellee was notified that she was failing one of her 12-hour courses. Her school counselor advised her to withdraw from the semester program, send a letter asking for readmission, and re-enter the school the following January under the School's newly organized quarter program. Appellee did this and was re-admitted but received the grade WF (withdrew failing) for her Fall, 1979 semester's grades. Appellee successfully completed a total of six 3-hour courses under the quarter system in order to make up the "WF" grade placed on her record while she was under the semester system.

However, the 1979–1981 catalog, under which the appellee re-entered the school, contained a restriction that was not in the 1978–1979 catalog. That statement was: "A student with more than two D's in the program will be required to withdraw."

During the course of appellee's progress through the quarter system, she received two "D's." She subsequently received official notification from the School that she was being terminated from the program because school policy so required of any student with a total of three "D's", "F's" or "WF"s". Appellee then tried to talk with the Dean about her expulsion, but she was repeatedly denied an interview.

Finally, appellee brought this suit, contending that the 1979–1981 catalog, with its "no more than two D's" requirement, should not apply to her since she originally entered the School under the 1978–1979 catalog. The resulting injunction is the order from which the appellants appeal.

Appellants' first point of error contends that the trial court erred in overruling their plea in abatement. Appellants maintain that because they are a part of the State's university system, they share in governmental immunity and cannot be sued without legislative consent or statutory authorization.

We agree with appellants that a party must have legislative consent or statutory authorization before it can maintain a suit and recover a judgment which will operate to control State action, or subject the State to liability, or which would affect the State's property rights and interests. *Director of the Department of Agriculture and Environment v. Printing Industries Association of Texas*, 600 S.W.2d 264 (Tex. 1980); *Teacher Retirement System of Texas v. Neill*, 563 S.W.2d 873 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.); *Texas Technological College v. Fry*, 278 S.W.2d 480 (Tex. Civ.App.—Amarillo 1954, no writ). However, it is equally well settled that an entity or person whose rights have been violated by the unlawful action of a State official may bring suit to remedy the violation or prevent its occurrence, and such suit is not a suit against the State requiring legislative or statutory authorization. *Director of the Department of Agriculture and Environment v. Printing Industries Association of*

Texas, supra; Texas Highway Commission v. Texas Assoc. of Steel Importers, Inc., 372 S.W.2d 525 (Tex.1963); W.D. Haden Co. v. Dodgen, 158 Tex. 74, 308 S.W.2d 838 (Tex. 1958). Therefore, we hold that appellee may maintain this suit for injunctive relief to determine if the action of the school officials in dismissing appellee is unauthorized. We overrule point of error number one.

Appellants' second point of error alleges that the trial court erred in overruling their plea of privilege, because venue was not proper in Harris County. We have searched the record and find no plea of privilege or any indication that one was filed. Further, the record is devoid of any controverting plea or any evidence on this issue. Finding nothing in the record to support appellants' claim, we overrule their second point of error.

Appellants contend, in their third point of error, that the trial court erred in issuing its order granting the temporary injunction because it is impracticable and self-contradictory, and purports to abolish all academic standards as applied to appellee. Our attention is directed toward the contradictory terms of provisions 5 and 9 of the injunctive order. Provision 5 of the order calls for adjusting appellee's grade from the semester to the quarter system, whereas provision 9 provides for correcting the quarter system grades to semester grades.

Except for this conflict, the injunctive order is clear and precise and adequately informs appellants of acts they are restrained from doing. This conflict is remedied, however, by modifying the order, by deleting the provisions of section 5. Fields Sewerage Co. v. Bishop, 30 S.W.2d 412 (Tex. Civ.App.—Dallas 1930, writ ref'd); Norton v. Integral Corp., 584 S.W.2d 932 (Tex.Civ. App.—Austin, 1979, no writ).

■ In addition to the contradictory provisions, appellants contend that the injunction is overly broad and exaggerated, arguing that the injunction would prevent the University from expelling appellee regardless of how many failing grades she received. We disagree. If the appellee receives too many failing grades, she cannot graduate because she will not have maintained the 2.0 GPA required under the 1978–1979 catalog.

We overrule the third point of error.

■ The fourth point of error alleges that the trial court erred in issuing its order granting a temporary injunction because the injunction is in effect a mandamus compelling state officers to perform certain acts, and exclusive jurisdiction for the issuance of such a writ is in the Supreme Court of Texas. Appellants rely on Art. 1735, Tex.Rev.Civ.Ann., which indicates that only the Supreme Court can issue a writ of injunction or mandamus against any of the officers of the executive departments of this State's government.

This statute and its application were discussed in Malone v. Rainey, 133 Tex. 622, 133 S.W.2d 951 (Tex.1939). The Supreme Court held that, in a suit to compel admission to a State University, the School officials are not officers of this State within the meaning of Article 1735. See also McLarty v. Bolton, 144 Tex. 490, 191 S.W.2d 850 (Tex.1946). Consequently, this statute does not apply to the present case and we overrule the appellants' fourth point of error.

Appellants next contend that the trial court erred in finding that a valid contract existed between appellants and appellee that would bind the former to anything more than impartial evaluation of appellee's academic work. They maintain that principles of contract law should not be strictly applicable in construing provisions of a student manual. However, appellants further assert that if the manual is a contract, then it should not be binding and unchangeable so that modification would be impossible. The University, in order to properly exercise its educational responsibility, should be able to modify the catalog as it becomes necessary.

The appellee agrees that a School has the right to change its catalog, but argues that there was an express promise by the Uni-

versity in the 1978–1979 catalog to allow a student who begins school under a certain catalog to continue through the program under that same catalog. Any rule change would not apply retroactively to a student electing to be bound under a previous catalog.

We hold that a school's catalog constitutes a written contract between the educational institution and the patron, where entrance is had under its terms. *Texas Military College v. Taylor,* 275 S.W. 1089 (Tex.Civ.App.—Beaumont 1925, no writ). *Vidor v. Peacock,* 145 S.W. 672 (Tex. Civ.App.—San Antonio 1912, no writ). Therefore, in the instant case, the appellee, upon entering the nursing school under the 1978–1979 catalog, had a right to rely on its terms. This catalog permitted a student to complete the degree requirements under its terms, within a six-year period, regardless of the school's later amendments to the catalog. Further, the 1978–1979 catalog did not permit the school to dismiss a student based on the number of bad grades that that student made; it only required a student to maintain a 2.0 GPA.

Appellants next contend that even under the 1978–1979 catalog, appellee fell below the 2.0 minimum GPA with the "WF" she received, and that she would have been expelled anyway under the semester system. This, however, is contrary to the provisions of the 1978–1979 catalog which dictates scholastic probation for such conduct.

The University did allow her to make up these courses, and appellee made a "C" or better in all of them. The school's effort to dismiss appellee was based on the number of bad grades and not on her falling below the minimum GPA standards.

The appellants' fifth point of error is overruled.

Appellants contend, in their sixth and final point of error, that the trial court erred in issuing the temporary injunction, because appellants' First Amendment right to academic freedom allows it to set academic standards as it will, unimpeded by the continuing oversight of the courts. Ap-

pellants argue that for a student to have a cause of action, the student would have to show arbitrary and capricious conduct on the part of University officials. We disagree.

Appellee never suggests that the standards of the University are unreasonable, or that the University cannot change the standards. Neither does she dispute that if a student fails to maintain the prescribed scholastic rating, the dismissal would be justified. Appellee only questions her right to be judged under the scholastic rating prescribed in the 1978–1979 catalog, rather than that contained in the 1979–1981 catalog.

The sixth point of error is overruled.

An order granting a temporary injunction should not be reversed unless an abuse of discretion is shown. We find no abuse of discretion. The judgment of the trial court, as modified, is affirmed.