BANKS, Presiding Justice,
dissenting:
¶ 50.1 respectfully dissent.
¶ 51. As noted by the majority, several jurisdictions have agreed that the catalog serves as a contract between the school and the students. See, e.g., Ross v. Creighton Univ., 957 F.2d 410 (7th Cir.1992); Doherty v. Southern College of Optometry, 862 F.2d 570 (6th Cir.1988); Corso v. Creighton Univ., 731 F.2d 529 (8th Cir.1984); Mahavongsanan v. Hall, 529 F.2d 448 (5th Cir.1976); Abbariao v. Hamline Univ. Sch. of Law, 258 N.W.2d 108 (Minn.1977); Bleieher v. University of Cincinnati College of Med., 78 Ohio App.3d 302, 604 N.E.2d 783 (1992); University of Texas Health Science Ctr. at Houston v. Babb, 646 S.W.2d 502 (Tex.Ct.App.1982).
¶ 52. Here, a clause in the catalog states that the rules are subject to change. Of *543 course, the school has an interest in updating and advancing its curriculum to meet higher standards to continue to further its students level of educational attainment. However, absent some written assurance of what is expected of them, how is the student protected from sudden changes? In my view, there must be a rule of reasonableness with respect to changing requirements for progress and graduation once a student has committed to the school based upon the written representation of the school with respect to its requirements. Our task, here then is to determine whether the chancellor erred in determining that the changes made here and the manner of their implementation fell short of that which is reasonable.
¶ 53. Here, the school raised the hurdles in the middle of the race. Moreover, after the race, Christopher W. Hughes is left with only two options, quit or start over. This is neither justice nor the law of this state.
¶ 54. Because this state has not considered this specific issue, the majority looks elsewhere for support. Nevertheless, the majority’s reliance on Hammond and Ma-havongsanan is misplaced. In each of those cases the student was given some option to either continue in another school, without reapplying, or take additional classes. UMC did not give these options to Hughes. On the contrary, Hughes was faced with two alternatives, start over or quit.
¶ 55. In Mahavongsanan, Mahavongsa-nan was confronted with the university’s new comprehensive examination requirement. Mahavongsanan v. Hall, 529 F.2d 448, 450 (5th Cir.1976). Mahavongsanan had already begun school before the university adopted that comprehensive examination requirement. However, there, the school gave Mahavongsanan the opportunity to complete additional course work in lieu of the comprehensive examination. Id. at 450. Instead of taking that option, she brought suit. The court did not find error in the school’s action.
¶ 56. Also, in Hammond v. Auburn Univ., 669 F.Supp. 1555, 1561 (M.D.Ala.1987), aff'd mem., 858 F.2d 744 (11th Cir.1988), the court upheld Hammond’s dismissal from Auburn University’s College of Engineering. Nevertheless, the court made note that Hammond was not dismissed from Auburn University, but rather, “only one avenue was closed to him.” Hammond was permitted to pursue any other curricula offered at Auburn. Id. at 1558. Moreover, the case does not suggest that Hammond could not apply to another Engineering school.
¶ 57. Here, Hughes’s only avenue is closed to him. He cannot continue at UMC’s medical school. Moreover, he cannot enter another school with his status at UMC. The harsh reality of his situation is that he cannot be a doctor as a result of failing a test that he was forced to take prematurely.
¶ 58. This case is similar to University of Texas Health Science Ctr. v. Babb, 646 S.W.2d 502 (Tex.Ct.App.1982). There, Babb entered nursing school, under the requirements of the school’s 1978-1979 catalog. Babb withdrew from school after receiving failing grades. When she reentered school, the 1979-1981 catalog contained a new restriction not in the former catalog that required a student receiving more than two D’s in the program to withdraw. Id. at 504. There, the court held that a school’s catalog constitutes a written contract between the educational institution and the patron, where entrance is had under its terms. Id. at 506. The court held that the student had a right to rely on the terms of the 1978-1979 catalog. Id. The court held that the 1978-1979 catalog allowed a student to complete the degree requirements under its terms, within a six-year period, despite the school’s later amendments to the catalog. Id.
¶ 59. Here, UMC changed the requirements of the catalog. Hughes did not meet those requirements. Nevertheless, I find the reasoning of Babb persuasive. *544 Hughes is entitled to continue his matriculation according to the catalog that was in place at the time he entered UMC.
¶ 60. A party asserting equitable estop-pel must show (1) that he has changed his position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct. Ivy v. Grenada Bank, 401 So.2d 1302, 1303 (Miss.1981); Thomas v. Bailey, 375 So.2d 1049, 1052 (Miss.1979); Birmingham v. Conger, 222 So.2d 388, 392-93 (Miss.1969). Moreover, it is not necessary for the chancellor to make an express finding of detrimental rebanee for such a proposition to stand. PMZ Oil Co. v. Lucroy, 449 So.2d 201, 205 (Miss.1984). This Court looks to the opinion as a whole to determine the basis for the opinion. Id. at 205.
• ¶ 61. In PMZ Oil Co., this Court upheld a chancellor’s holding that the Lucroys had rebed to their detriment based on representations made by PMZ/Pinkston. Id. There, the Lucroys purchased their home lot in reliance of the representation that it would be an exclusive single-family residential. Id.
¶ 62. Here, Hughes relied on the catalog in place when he entered medical school. Hughes spent money and time pursing his medical degree in accordance with that catalog. The record reflects that he reasonably thought he would have six times to take the exam because that was the practice at the time he entered school. Under that catalog, he would have six times to take the exam. Moreover, the chancellor recognized Hughes’s detrimental reliance. Specifically, the chancellor stated as follows:
UMC is herewith ordered to clear Mr. Hughes so that he can sit for the USMLE Step I test at the next available sitting. This wib at least protect Mr. Hughes’ reliance interest, which is founded on the policies announced in the catalog which was in effect at the time of his admission.
(emphasis added).
¶ 63.1 agree.
McRAE AND DIAZ, JJ„ JOIN THIS OPINION.