NOT DESIGNATED FOR PUBLICATION

No. 124,788

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSE H. VASQUEZ,
*Appellant*,

v.

CLEVELAND CHIROPRACTIC COLLEGE, INC.,
and
CLEVELAND UNIVERSITY, KANSAS CITY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed November 4, 2022. Affirmed.

*Andrew B. Protzman*, of Leawood, for appellant.

*Julie Parisi*, of Seigfreid Bingham, P.C., of Kansas City, Missouri, for appellee.

Before BRUNS, P.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM:  Jose H. Vasquez appeals the district court's dismissal of his lawsuit against Cleveland Chiropractic College (Cleveland) for breach of contract. Vasquez enrolled in a dual degree program at Cleveland in August 2009 because the graduation requirements for his selected programs did not include passage of the board examination offered by the National Board of Chiropractic Examiners (NBCE). But that policy changed one month later, and students were now required to pass the first portion of the NBCE exam in order to graduate. Roughly ten years later, Vasquez filed a lawsuit against Cleveland alleging the new graduation requirement breached the contract he entered into

1

with the college at the time of his enrollment. The district court granted Cleveland's motion to dismiss finding that the 2008-09 school Catalog did not constitute a contract and to the extent that it did, Vasquez filed his claim well out of time.

We find the district court's dismissal of the lawsuit was appropriate. Vasquez failed to identify a precise contractual term that Cleveland allegedly breached in adopting the graduation requirement. Moreover, the statute of limitations time clock began to run in 2009 with the implementation of the complained of change, placing Vasquez' 2021 filing well outside the five-year statute of limitations. Finally, we reject Vasquez' contention that the district court impermissibly considered factual matters outside the record when analyzing the motion to dismiss. The decision of the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Jose H. Vasquez selected the dual Bachelor of Science and Doctor of Chiropractic medicine program at Cleveland because admissions representatives communicated that graduation from those programs did not require him to take the NBCE exam. According to Vasquez, their verbal guarantee was reaffirmed by the school's 2008-09 Catalog. The opportunity to graduate with those degrees free of the requirement for that added exam aligned well with Vasquez' goal of practicing chiropractic medicine in the Philippines, because that country does not require passage of the NBCE to practice as a chiropractor.

A month after he enrolled, Cleveland released its 2009-10 Catalog which advised that students must now successfully complete the first portion of the four-part NBCE exam prior to enrolling in Clinic Internship II, a course required for graduation. Vasquez allegedly remained oblivious of this change for the next seven years but after learning of its existence, he submitted a request to be grandfathered-in or otherwise excused from the new requirement. Cleveland denied his request.

2

Vasquez initially filed suit against Cleveland in July 2020 but voluntarily dismissed it five months later following a motion to dismiss. Roughly one year later Vasquez filed a new petition against Cleveland which it again promptly moved to dismiss. Vasquez in turn submitted an amended petition in June 2021 which presented a breach of contract claim.

Vasquez alleged that he entered into an express contract with Cleveland at the time of his enrollment, the terms of which were set forth in the 2008-09 Catalog. That is, he agreed to pay the costs and fees associated with tuition in exchange for Cleveland providing curriculum and credits toward his selected degrees. To satisfy his end of the bargain, Vasquez accumulated $356,856.75 in student loans, used $13,648 in Pell Grant funds, completed 273.5 credit hours toward the Doctor of Chiropractic degree, and 155 credit hours toward the Bachelor of Science degree. But when Cleveland denied his request for exemption from the NBCE exam requirement, it breached its obligation to him, resulting in monetary damage, as well as emotional distress, embarrassment, humiliation, damage to his reputation, and actual out-of-pocket expenses.

Cleveland moved to dismiss Vasquez' petition alleging that it failed to state a claim. In support of its request, it asserted that (1) Vasquez failed to allege Cleveland breached a specific term or provision of the purported contract; and (2) that Vasquez' claim was barred by the five-year statute of limitations controlling claims for breach of a written contract. As to its first contention, Cleveland explained that while Vasquez alleged that an express contract existed between the two parties based on the language of the 2008-09 Catalog, he never identified which particular term of that alleged contract was breached by Cleveland's denial of his request for exemption from the NBCE exam. Cleveland further asserted that it was clear from the 2008-09 Catalog that it retained the latitude to change its curriculum at any time without notice and it was Vasquez' responsibility to stay abreast of any curriculum changes. Cleveland specifically highlighted the following language from the 2008-09 Catalog:

3

"All statements in this *Catalog* are applicable September 2008 through August 2009 and are provided for the information of the public. This *Catalog* applies to all students.

"All statements including those related to calendar, curriculum, fees, rules and regulations are true and correct as of the date of this publication and are subject to change without prior notice. It is the responsibility of students of Cleveland Chiropractic College to be well acquainted with the rules, regulations, requirements and responsibilities provided in this publication, as well as various updates posted throughout the year by the College. *Verbal communication that may have an impact on students, faculty, or staff will be verified in writing.*"

Cleveland pointed out that the spirit of that language carried through to the 2009-10 Catalog—Cleveland retained the right to implement curriculum changes without notice, while the students continued to bear the responsibility of ensuring they were aware of their respective educational requirements and obligations. Thus, according to Cleveland, Vasquez' claim that it had an obligation to notify him of the policy change and a duty to grant him an exemption from the NBCE requirement failed as a matter of law.

Cleveland fleshed out its second assertion, that Vasquez' claim was time barred, by pointing out that the alleged breach Vasquez complained of actually occurred in September 2009 when the graduation requirement was implemented. Therefore, the five-year statute of limitations expired in 2014, placing Vasquez' 2021 petition seven years out of time.

Not long after, Vasquez filed a motion opposing Cleveland's request for dismissal. He first clarified his contention that he entered into an express contract with the college at the time of enrollment. Next, he explained that he did not view the catalog as an embodiment of the terms of the contract. Rather, it was simply evidence of the contract's existence.

4

Turning to Cleveland's arguments specifically, Vasquez argued that its request contained contradictory assertions in that it suggested the catalog was not a contract, yet then also argued the terms of the catalog imposed a contractual duty upon Vasquez to stay apprised of any curriculum changes. He also highlighted language from his amended petition to reiterate that Cleveland breached the contract by rejecting his request to be excused from the NBCE requirement. Thus, according to Vasquez, he satisfied his burden to plead a breach and identify the terms breached.

As for the statute of limitations, Vasquez asserted that the true trigger point was Cleveland's 2017 denial of his request to continue toward graduation without the NBCE examination because that was when Cleveland refused to perform their end of the bargain. Vasquez offered the added point that his only obligation at the current stage of the case was to properly plead that a breach occurred. So, *when* it occurred was irrelevant to the inquiry. Cleveland responded and repeated that it was clear from the 2008-09 and 2009-10 Catalogs that Vasquez bore the responsibility to be aware of any curriculum changes. Thus, it was under no obligation to personally inform him of the new NBCE requirement. It also restated its position that any breach of contract action accrued when the new policy was implemented in 2009 and Vasquez' characterization of the accrual date as 2017 was simply an attempt to circumvent the five-year statute of limitations.

The district court held a hearing on the matter and, after hearing arguments from both parties, granted Cleveland's motion to dismiss. In support of its decision the court explained that, per the language of the catalogs, it was Vasquez' responsibility to be aware of any curriculum changes. Additionally, in discussing how a reasonable person would think under the circumstances, the court remarked that it failed to understand how any student who was "remotely plugged in to his college" would be unaware of the policy change as it most assuredly would have "spread like wildfire" throughout the chiropractic class. Ultimately, the court concluded that (1) the catalog was not a contract, and (2) even if it were, the statute of limitations expired because the breach occurred in 2009. Vasquez

5

timely appealed and brings the matter before us to analyze whether the district court erred in dismissing his suit against Cleveland.

ANALYSIS

*The District Court Properly Granted Cleveland's Motion to Dismiss*

Vasquez contends that he properly alleged a breach of contract claim and therefore the district court erred by granting Cleveland's motion to dismiss. Cleveland counters that the decision of the district court should be upheld because Vasquez' petition failed to allege the existence of a contract.

*Standard of Review*

This court exercises unlimited review over a district court's decision to grant a motion to dismiss. *Lozano v. Alvarez*, 306 Kan. 421, 423, 394 P.3d 862 (2017). "[T]he question before this court is whether [Vasquez'] petition met the requirements of K.S.A. 2020 Supp. 60-208(a)—a short and plain statement of the claim showing that [he]was entitled to relief and a demand for the relief sought." *Kucharski-Berger v. Hill's Pet Nutrition*, 60 Kan. App. 2d 510, 515, 494 P.3d 283 (2021). When doing so, an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom. *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752 (2013). If the facts and inferences state a claim based on plaintiff's theory or any other possible theory, then the dismissal by the district court should be reversed. 296 Kan. at 546.

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." K.S.A. 2021 Supp. 60-210(c). Therefore, a contract attached to a pleading may be considered by this court when analyzing the district court's motion

6

to dismiss. *Limerick v. Barrett*, 3 Kan. App. 573, 43 P. 853 (1896); see also *Crosby v. ESIS Insurance*, No. 121,626, 2020 WL 6372266, at *2 (Kan. App. 2020) (unpublished opinion) ("Kansas courts have long recognized that a written contract attached to a pleading, whether it be a petition or answer, may be considered when determining whether to dismiss a claim for breach of contract."). If there is a conflict between the pleading and the written instrument, then the written instrument controls. *Fleming v. Campbell*, 146 Kan. 294, Syl. ¶ 2, 69 P.2d 718 (1937).

A party asserting a breach of contract claim has the burden to establish the existence of five components: (1) a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach. *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083 (2013).

Whether a contract exists depends on the intentions of the parties and raises a question of fact. *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012). That said, when the legally relevant facts are undisputed, the existence and terms of a contract raise questions of law for the court's determination. 295 Kan. at 282. "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013) (quoting *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 [2011]).

Similarly, if there are no disputed material facts, the question of whether a party breached a contract is decided as a matter of law. *Daggett v. Board of Public Utilities*, 46 Kan. App. 2d 513, 515, 263 P.3d 847 (2011). A breach of contract occurs when there is

"'a material failure of performance of a duty arising under or imposed by agreement.'" 46 Kan. App. 2d at 515.

Here, the parties generally agree to the relevant facts: Vasquez enrolled in August 2009, the 2009-10 Catalog was published in September 2009, Vasquez learned of the NBCE requirement in summer 2016, and he requested the exemption that Cleveland denied in January 2017. Additionally, both parties have presented this court with the catalogs and, according to Vasquez, the 2008-09 Catalog is the express contract at issue. Since there are uncontested facts concerning the terms and the dates, we will conduct an unlimited review over the whether a contract exists, its terms, and whether it was breached.

*The Amended Petition*

The first of the five elements Vasquez must satisfy to succeed on his breach of contract claim demands he prove the existence of a contract. He first contends that Cleveland conceded the parties executed a contract and cites to page six of the hearing transcript, when the parties discussed the statute of limitations. We reviewed that page, and it includes no such admission by Cleveland.

Vasquez next asserts that even if Cleveland did not concede the existence of a contract, the 2008-09 Catalog functioned as an express contract between Cleveland and its students and includes support for this claim by citing those portions of the catalog that discuss the relationship between tuition course credit, academic policies, and conduct and discipline standards.

In granting the motion to dismiss the district court looked to language in both catalogs that place the obligation upon the student to stay up to date with curriculum requirements and any changes which impact their respective programs. In doing so, it

8

cast this case in a light much like *Coffman v. Hutchinson Community College*, No. 17-4070-SAC, 2018 WL 3093506 (D. Kan. 2018). In that case, Coffman was a student at Hutchinson Community College who alleged that the college's handbook represented a contract between students and the college. The reviewing court disagreed and cited the following handbook language:

"This catalog is for informational purposes only and does not constitute a contract. Every reasonable effort was made to ensure that all information contained herein is accurate. Hutchinson Community College reserves the right, at any time, to change graduation requirements, costs, curricula and content, without notice. The college further reserves the right to add or delete course offerings and other information without notice. Information about changes is available from college counselors and advisors or on the college website." 2018 WL 3093506, at *16.

The court explained that this provision "plainly states that the catalog does not constitute a contract and that all information found in it was subject to the college's unilateral change." 2018 WL 3093506, at *17. See also *Eiland v. Wolf*, 764 S.W.2d 827, 838 (Tex. App. 1989) (finding a university catalog was not an enforceable contract because the catalog suggested that it was not a contract and that its provisions were subject to change without notice); *Tobias v. University of Texas at Arlington*, 824 S.W.2d 201, 211 (Tex. App. 1991) (finding a university catalog was not an enforceable contract because the catalog explicitly stated it was not a contract).

We recognize that Cleveland's catalog does not contain a similar disclaimer. Kansas law contemplates the following with respect to contract modification:

"One party to a contract cannot unilaterally change the terms thereof. Modification requires the assent of all the parties to the contract. Their mutual assent is as much a requisite in effecting a modification as it is in the initial creation of a contract. Mutual assent may not only be shown by an express agreement, but also may be implied from the circumstances and conduct of the parties. In either case, however, there must be a

9

meeting of the minds with respect to the proposed modification." *Fast v. Kahan*, 206 Kan. 682, 684-85, 481 P.2d 958 (1971).

Vasquez takes the position that the 2008-09 Catalog is an express contract, which is defined as one "whose terms the parties have explicitly set out." See Black's Law Dictionary 406 (11th ed. 2019). If so, then Vasquez agreed to the terms of that contract, which explicitly gave Cleveland the latitude to change curricular requirements with no notice to Vasquez. Thus, it cannot be said the curriculum change constituted a modification that lacked mutual agreement. Cf. *Capital Iron Works Co. v. Maryland Casualty Co.*, 99 Kan. 45, 160 P. 1006, 1008 (1916).

It is not a foreign notion that the relationship between a university and a student is contractual, and that the terms of the contract may be found in catalogs. See *Zumbrun v. University of Southern California*, 25 Cal. App. 3d 1, 10 (1972) ("The basic legal relation between a student and a private university or college is contractual in nature. The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract."); *University of Texas Health Science Center at Houston v. Babb*, 646 S.W.2d 502, 506 (Tex. App. 1982) ("a school's catalog constitutes a written contract between the educational institution and the patron"); *Wickstrom v. North Idaho College*, 111 Idaho 450, 452, 725 P.2d 155 (1986) ("It is by now well-settled that the principal relationship between a college and its students is contractual."); *Frederick v. Northwestern University Dental School*, 247 Ill. App. 3d 464, 471, 617 N.E.2d 382 (1993) ("A college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins."); *Andre v. Pace University*, 655 N.Y.S. 2d 777, 779 (1996) ("The relationship between plaintiff and Pace University is contractual in nature . . . . The rights and obligations of the parties, as contained in the university's bulletins and catalogs became a part of the parties' contract.").

10

Courts have not departed from that conclusion simply because, as here, the student catalogs and other documents allow unilateral curriculum changes without notice. See *Jallali v. Nova Southeastern University, Inc.*, 992 So. 2d 338, 342-43 (Fla. Dist. Ct. App. 2008) (quoting *University of Mississippi Medical Center v. Hughes*, 765 So.2d 528, 535 (Miss. 2000) (agreeing with other courts "that 'implicit in the university's general contract with students is a right to change the university's academic degree requirements if such changes are *not* arbitrary or capricious'"); *Hammond v. Auburn University*, 669 F. Supp. 1555, 1562 (M.D. Ala. 1987) (citing *Mahavongsanan v. Hall*, 529 F.2d 448, 450 [5th Cir. 1976] (assuming that some form of contract existed between the student and the university, noting the university bulletin's language allowed for unilateral curriculum changes, and finding that "[i]mplicit in a student's educational contract with the University is the duty of the student to comply with the University's rules and regulations which the University can modify so as to properly exercise its educational responsibilities"). Thus, despite viewing the relationship as contractual, courts do not adhere to a rigid application of contract principles in their analysis of the issue. See *Gamble v. University System of New Hampshire*, 136 N.H. 9, 12-13, 610 A.2d 357 (1992) (The relationship between a university and its students is governed by contract principles, however, a strict doctrinal approach is inappropriate.); *Hughes*, 765 So.2d at 534 (collecting cases and noting that "elements of the law of contracts have been applied to the student-university relationship, but rigid importation of the contractual doctrine has been rejected").

*Mandawala v. Baptist School of Health Professions*, No. SA-19-CV-01415-JKP-ESC, 2020 WL 5250642 (W.D. Tex. 2020), offers some measure of guidance as there, the United States District Court for the Western District of Texas faced a question much like what Vasquez presented to us. In that case, Mandawala filed a complaint alleging, among other things, that the university breached its contract with him because "it promised to provide education sufficient to prepare him to work as a sonography technician in exchange for payment for said education." 2020 WL 5250642, at *7. And

11

while he participated in and paid for the courses, the university failed to provide appropriate instructors to enable him to complete his coursework. The university moved to dismiss, but the court found that "[w]hile the circumstances differ under which courts have found contracts between students and education institutions, contracts have been found to exist." 2020 WL 5250642, at *7. Accordingly, when the facts were construed in a light most favorable to Mandawala and it drew all reasonable inferences in his favor, it revealed that he alleged facts sufficient to state a contract claim. 2020 WL 5250642, at *7.

In a case bearing even greater similarities to the one we have been asked to analyze, the Supreme Court of Mississippi considered whether a curriculum change at the University of Mississippi Medical Center breached the contract. *Hughes*, 765 So.2d at 533-534. Hughes enrolled in medical school in 1992 and at the time, the university did not require passage of any steps of the United States Medical Licensing Examination (USMLE) to graduate. But the next year, the school implemented a requirement that students pass the first portion of the USMLE exam prior to beginning their junior year. Hughes failed the exam three times and was then notified of the university's intent to dismiss him as a student. He pursued an injunction in chancery court and prevailed. The chancellor ordered the college to reenroll Hughes and allow him to sit for the exam again. The college appealed.

On appeal, Hughes argued that the university catalog was a contract and that "according to this contract, he was to receive a doctor of medicine degree if he paid his tuition and satisfied the academic requirements found in the school's catalog at the time of his enrollment." 765 So.2d at 534. The court ultimately found that Hughes had an implied contract with the school that only protected him from arbitrary modifications of academic requirements by the university. Since the imposition of the USMLE requirement was not arbitrary, the university did not breach the contract. That is, the

12

potential for modification standing alone did not undermine the contractual nature of the university-student relationship. 765 So.2d at 542.

In this case, when ruling on Cleveland's motion to dismiss, the district court rejected the notion that the parties entered into a contractual arrangement. Rather, because the terms of their relationship contemplated unilateral conduct by Cleveland it defied characterization as a valid contract. But as evidenced by the summarization of our research, that conclusion deviates from the generally held position taken on the issue by several jurisdictions. We find the analyses and conclusions discussed by those courts to be persuasive and choose to follow their lead. In so doing, we find that the basic legal relation between a student and their university or college is, in some aspects, contractual. The catalogs and regulations the institution provides to the student are properly considered part of that contract. Thus, Vasquez has satisfied the first step of the inquiry which, again, was to prove the existence of a contract.

Vasquez' second pleading requirement for the breach of contract claim was to show consideration. "'Consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other.'" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 32, 59 P.3d 1003 (2002) (citing 17A Am. Jur. 2d, Contracts § 113, p. 129). His petition successfully demonstrated the existence of consideration by virtue of the specific information he provided concerning the loans and grants he submitted in exchange for academic instruction.

Next, Vasquez has the burden to establish he performed in compliance with the contract or had the willingness to do so. This requirement is satisfied by Vasquez' attestation in his petition that he "performed or was willing to perform in compliance with the terms of the contract entered into."

13

The fourth component of the analysis is one of the most critical. It is at this point that Vasquez has the burden to prove an actual breach of that contract between him and Cleveland. He contends that the breach occurred on January 12, 2017, when Cleveland denied his request to continue towards graduation under the terms of their agreement as he perceived them to be, rather than in accordance with the school's new NBCE exam requirement. But the significant hurdle Vasquez faces is that he does not identify or otherwise direct us to any terms from either the 2008-09 or 2009-10 Catalogs that obligate Cleveland to honor such a request. In both his petition and his appellate brief, Vasquez focuses largely on that portion of the 2008-09 Catalog which suggests that students were not required to pass the NBCE exam in order to graduate. He then makes the leap that Cleveland violated the terms of their contract when it refused to allow him to proceed with his education in a manner consistent with the 2008-09 graduation requirements. But Vasquez' argument simply arises out of what he believes Cleveland should have done based on his own notions of fairness which falls well short of what is needed to satisfy this point in the analysis. Rather, our inquiry is confined to whether Vasquez successfully established a cause of action for breach of contract based on a violation of the specific terms agreed upon by the parties.

*University of Texas v. Babb*, 646 S.W.2d 502, offers a valuable comparison. In that case, Babb enrolled at the University of Texas School of Nursing under the terms of the 1978-79 school Catalog, which included the following provision:

> "A student may obtain a degree from the School of Nursing according to the requirements in the catalog under which he enters the School, or the catalog governing any subsequent year in which he is registered in the School, provided that he completes the work for the degree within six years of the date of the catalog." 646 S.W.2d at 504.

Babb withdrew from the program and received WF (withdraw failing) marks for her courses that semester. She then returned to the school under the 1979-81 Catalog, which included a provision that required a student to withdraw from the program if he or

14

she received a 'D' in more than two classes. That requirement was not part of the terms set forth in the 1978-79 Catalog. Babb subsequently received two Ds which, combined with her previous WFs, triggered the new policy, and she was asked to leave the school.

Babb filed a lawsuit against the school and, similar to Vasquez, argued that the new requirement should not apply to her because she initially enrolled under the terms of the 1978-79 Catalog. 646 S.W.2d at 504. The district court granted a temporary injunction which allowed Babb to resume her classes and the university appealed. The Court of Appeals of Texas affirmed the district court's injunction on the grounds that the 1978-79 Catalog constituted a written contract. It explained that since the catalog permitted a student to complete the degree requirements under its terms, within a six-year period, regardless of the school's amendments to the catalog, then the new withdrawal requirement was inapplicable to Babb because she elected to be bound by the 1978-79 Catalog. 646 S.W.2d at 506.

Unlike *Babb*, there is not similarly beneficial language in the 2008-09 Catalog from which Vasquez can derive relief. Absent such precise terms, Cleveland was under no obligation to exempt him from the new NBCE requirement. Without a duty to do so, Cleveland's denial of Vasquez' request did not amount to a breach. See *Coffman*, 2018 WL 3093506, at \*17 ("There are no alleged terms of any handbook, catalog, or policy to support the plaintiff's claim that HCC could not dismiss a student for academic reasons, unless the student's GPA falls below a certain level or until the grievance investigation and appeal process is completed."); *Polley v. Northwestern University,* 560 F. Supp. 3d 1197, 1207 (N.D. Ill. 2021) ("Plaintiffs first allege that there were express terms in their respective admissions letters that Northwestern would provide the named Plaintiffs with in-person instruction. A review of the admissions letters sent to the named Plaintiffs, however, do not show any promise of in-person instruction."). We decline to find that Vasquez fulfilled his obligation to allege a breach.

Fifth and finally, Vasquez must establish the damages he suffered as a result of Cleveland's alleged breach. He sought to do so by asserting that he suffered monetary damage, "emotional distress, embarrassment, humiliation, and damages to his reputation, as well as out-of-pocket expenses." Although he admitted at the hearing on Cleveland's motion that such damages were incurred because he simply "cho[se] not to [take the test]," we find that damages were properly pled in his petition. See *Kucharski-Berger*, 60 Kan. App. 2d at 515 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007] ["'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely"'"]).

In order to successfully plead a breach of contract claim, Vasquez had the burden to satisfy each of the five aforementioned factors. Because he failed to identify a precise term in the contract that Cleveland neglected to honor, he cannot prevail on his claim that Cleveland breached the contract between them. Accordingly, the district court properly dismissed the suit he initiated against Cleveland. We recognize that we arrived at the same result as the district court in dismissing Vasquez' suit but did so through an alternative route. It found Vasquez failed to wholly establish the existence of a contract, while we concluded a contract exists, but Vasquez failed to identify the precise term allegedly breached. We are well within our right to affirm a finding of the district court as right for the wrong reason. See *State v. Parks*, 312 Kan. 487, 489, 476 P.3d 794 (2020) ("Appellate courts may affirm a district court as right for the wrong reason 'if an alternative basis exists for the district court's ruling.'").

*The District Court Properly Concluded that Vasquez' Breach of Contract Claim Exceeded the Five-Year Statute of Limitations.*

Vasquez' next assertion of error consists of a claim that the district court erred when it found any cause of action accrued in 2009 when Cleveland implemented its new

16

graduation requirement and therefore Vasquez' 2021 petition was barred by the five-year statute of limitations.

*Standard of Review*

A motion to dismiss for failure to state a claim may be granted if a statute of limitations defense clearly appears on the face of the petition. *Weaver v. Frazee*, 219 Kan. 42, 52, 547 P.2d 1005 (1976). The interpretation and application of a statute of limitations is a question of law over which an appellate court exercises unlimited review. *Garcia v. Ball*, 303 Kan. 560, 571, 363 P.3d 399 (2015). "A cause of action for breach of contract accrues when a contract is breached by the failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds* 247 Kan. 699, 803 P.2d 205 (1990).

*Date of Breach*

"For purposes of the statute of limitations, '[t]he test to determine when an action accrues is that point when a plaintiff could have first filed and prosecuted an action to a successful conclusion.'" *Hewitt v. Kirk's Remodeling & Custom Homes, Inc.*, 49 Kan. App. 2d 506, 511-12, 310 P.3d 436 (2013) (quoting *Jeanes v. Bank of America*, 296 Kan. 870, 874, 295 P.3d 1045 [2013]).

Here, both parties agree the relevant statute of limitations is found in K.S.A. 60-511(1), which provides that "[a]n action upon any agreement, contract or promise in writing" must be brought within five years. As stated previously, Vasquez contends the breach occurred on January 12, 2017, when Cleveland refused his request to be exempt from the NBCE requirement, thus, the petition was filed within the appropriate timeframe. According to this characterization of the breach, Vasquez had until January

2022 to file the petition. But as we just concluded in the discussion of the previous issue, Vasquez cannot direct us to any language in either catalog which expressly establishes that Cleveland was required to exempt Vasquez from the new policy. Therefore, a breach did not occur at the point Vasquez relies on.

In an effort to cast the matter in a bit of a different light. Vasquez alleges that the contract included a *promise* that Cleveland would not require him to pass a NBCE exam as a graduation requirement. See Black's Law Dictionary 1466 (11th ed. 2019) (defining "promise" as "The manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something."); 23 Williston on Contracts § 63:1 (4th ed. 2022) ("As a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract."). Even still, Vasquez cannot overcome the fact that the cause of action accrued in September 2009 because it was then that any alleged promise was broken. That is, it was from that point forward that the Clinical Internship II program requirement included the prerequisite, even if Vasquez was unaware of it. Stated another way, it was at that point that Cleveland failed to offer a path to graduation that did not include the first NBCE exam. See *Pizel*, 247 Kan. at 74; *Law v. Law Company Building Assocs.*, 295 Kan. 551, 574, 289 P.3d 1066 (2012) (noting that "[a] cause of action for breach of contract accrues on the date of breach, not the date of discovery . . . . ").

Vasquez fails to enlighten us as to why he was precluded from raising this issue in the fall of 2009. Moreover, even if we were to assume that breach is attached to Cleveland's denial rather than its implementation of the policy, Vasquez likewise fails to reveal what prevented him from requesting an exemption upon release of the 2009-10 Catalog. See *Chavez v. Saums*, 1 Kan. App. 2d 564, 565, 571 P.2d 62 (1977) (explaining that "a cause of action accrues, so as to start the running of the statute of limitations, as

18

soon as the right to maintain a legal action arises, the true test being at what point in time the plaintiff could first have filed and prosecuted his action to a successful conclusion"); *Edward Kraemer & Sons, Inc. v. City of Overland Park*, 19 Kan. App. 2d 1087, 1093, 880 P.2d 789 (1994) (analyzing when a breach related to a construction contract occurred by determining the earliest time the cause of action could have been pursued); *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 409-10, 582 P.2d 244 (1978) (analyzing when a breach in an employment contract occurred by determining when the cause of action could have been successfully maintained).

This court considered a somewhat similar set of facts in *Addison Manufacturing, Inc. v. National Farmers Union Property & Casualty Company*, No. 66,453, 1992 WL 12944447 (Kan. App. 1992) (unpublished opinion). Addison was the president of Addison Manufacturing and in 1979, Kenneth Wing, an insurance agent from National Farmers Union Property and Casualty Company (NFU), contacted him about purchasing insurance for the company. Throughout several of their conversations, Addison communicated the need for product liability insurance and Wing assured him NFU could provide the desired coverage. Wing delivered the insurance policy in 1979 and Addison paid its corresponding premiums until 1984. That year, Addison Manufacturing was sued in Oregon, and NFU denied Addison Manufacturing's claim because its policy did not include product liability coverage. Addison Manufacturing settled the Oregon lawsuit then sued NFU and Wing in 1989. The lawsuit was dismissed and refiled in 1990, but the trial court ultimately granted Wing's motion for a directed verdict, finding for NFU on each claim, including Addison Manufacturing's breach of contract claim.

On appeal, this court considered whether the statute of limitations barred Addison Manufacturing's breach of contract claim. Addison argued that, during their conversations, Wing promised him that product liability insurance was included in the policy. This court explained that the promises discussed by the parties "could form the basis for a breach of contract claim if the policy did not provide for product liability and

completed operations coverage." 1992 WL 12944447, at *4. Because the provision at issue was not in writing it was subject to a three-year statute of limitations. See K.S.A. 60-512(1). We concluded that the breach of contract claim was barred by the statute of limitations because the breach occurred in 1979 when Wing delivered the contract that lacked the promised product liability insurance. The court noted that "it is irrelevant that Addison did not know of the breach until coverage was denied in 1984." 1992 WL 12944447, at *4. Accordingly, Addison's lawsuit, which was originally filed in 1989, was barred by the statute of limitations.

*Addison Manufacturing* included three events. First, a promise was made. Second, a policy was implemented that violated the promise, which constituted the breach. Third, the promisee requested that promisor take an action regarding the initial promise, which the promisor denied. Vasquez' case follows a similar pattern. First, Vasquez alleges a contract was formed that included a promise not to require NBCE passage as a prerequisite for graduation. Second, a policy was implemented in 2009 that violated the initial promise. Third, Vasquez requested that Cleveland exempt him from the new policy change, which Cleveland denied. We will follow the path established by *Addison Manufacturing* and likewise conclude that Cleveland's policy change following the promise, rather than Cleveland's denial, is the proper point at which any breach occurred.

Vasquez directs our attention to *Turner and Boisseau v. Nationwide Mut. Ins. Co.*, 944 F. Supp. 842, 847 (D. Kan. 1996), for the proposition that "when the statute of limitations is at issue during a motion to dismiss, the dismissal should be denied." But *Turner and Boisseau* was a case involving legal malpractice. The court determined that the issue sounded in contract, rather than tort, and then faced the question of whether the contract at issue was written or oral. The court determined that the three-year statute of limitations for oral contracts controlled, and then turned to the question of when the cause of action accrued. The court explained there were at least four theories to explain when the statute of limitations began to run in Kansas legal malpractice cases. One theory, the

20

doctrine of continuous representation, holds that "the statute of limitations is tolled during the period the attorney continues to represent the client on the same matter out of which the alleged malpractice arose." 944 F. Supp at 847. The court also explained that it was unclear when the attorney ceased representing the client. Accordingly, the court found that there was "a question of fact as to the applicability of the statute of limitations." 944 F. Supp at 847. As a result, the court dismissed the motion. 944 F. Supp at 847.

But that issue is not present in this case. Rather, the parties agree that the statute of limitations accrued on one of two dates:  September 2009 or January 2017. Thus, no lingering factual question prevents us from assessing the proper date of the breach. In fact, this court has rejected the view that the accrual date in a breach of contract action is better left in the hands of a jury. See *Jarvis v. Nationwide Ins. Co. of Am.*, No. 120,332, 2019 WL 4725239, at *5 (Kan. App. 2019) (unpublished opinion). Instead, a district court's interpretation of a statute of limitations is a legal decision over which this court has unlimited review. *Garcia*, 303 Kan. at 571. The district court properly concluded that Vasquez' breach of contract claim was barred by the five-year statute of limitations.

Finally, Vasquez advanced an argument that the district court impermissibly considered matters outside the pleadings when granting the motion to dismiss. Specifically, Vasquez takes issue with the court noting "that a reasonable person on campus would know of school policy changes" and argues that courts may not consider matters outside the pleadings when ruling on a motion to dismiss. See *Hemphill v. Shore*, 295 Kan. 1110, 1117, 289 P.3d 1173 (2012).

The district court granted the motion to dismiss for two reasons. First, it found there was no contract between the parties, so Vasquez was precluded from asserting a breach of contract claim. Second, it found that even if there were a contract, the statute of limitations had expired because any breach occurred in 2009. Neither of these findings relied on the reasonable person comments or hinged on what a reasonable member of the

21

chiropractic class would or would not have understood following issuance of the 2009-10 Catalog. Accordingly, the court's ruling only relied on the pleadings.

Vasquez failed to fulfill the requirements necessary to establish a valid breach of contract claim. Even if those elements were satisfied, he failed to assert his claim within the five-year statute of limitations governing written contracts. Accordingly, the district court properly granted Cleveland's request for dismissal.

Affirmed.

\* \* \*

ATCHESON, J., concurring:  I concur in the result we reach and would affirm the dismissal of Jose H. Vasquez' amended petition against Cleveland Chiropractic College because the allegations in the pleading establish an insuperable statute of limitations bar to any breach of contract claim. As an enrolled student, Vasquez had a contractual relationship of some sort with the school—there was a bargained for exchange of his tuition dollars for a service intended to impart training in a professional field. Ultimately, we do not need to explore the contours of the legal relationship much beyond that to decide this case.

Giving the factual assertions in the amended petition and any reasonable inferences drawn from them the best construction for Vasquez, he sought and received assurances from representatives of Cleveland Chiropractic that he would not have to take any portion of the licensure examination for chiropractors as a graduation requirement. See *Rector v. Tatham*, 287 Kan. 230, Syl. ¶ 1, 196 P.3d 364 (2008) (dismissal for failure to state claim proper if factual allegations of petition and inferences reasonably drawn from them favoring plaintiff fail to establish any theory of recovery). The representatives made those assurances to Vasquez shortly before he started school in August 2009, and

22

they gave him a copy of the school's then current catalog, which was consistent with what they told him. The catalog, however, expressly stated it was "applicable [from] September 2008 through August 2009."

For purposes of deciding the appeal, I would assume that exchange created a contract between Vasquez and Cleveland Chiropractic, and a material term of the agreement stated Vasquez would not have to sit for the licensure examination. The term was necessarily material given its special importance to Vasquez. See Black's Law Dictionary 1772 (11th ed. 2019) (defining "material term" as "a contractual provision dealing with a significant issue"). Beginning with the fall semester in 2009—when Vasquez started—the school adopted a new requirement that chiropractic students must pass the first portion of the examination to graduate. Again, I would assume that requirement was inconsistent with the contract between Vasquez and Cleveland Chiropractic, even though the contract arguably was for a fixed period that ended in August 2009, as provided in the catalog the representatives gave him.

The parties treat any contract between Vasquez and Cleveland Chiropractic as a written one with a five-year statute of limitations for suing on any breach. See K.S.A. 60-511(1) (statute of limitations for breach of written contracts). Although the contract may have been partly oral and partly written and thus governed by a three-year statute of limitations, that makes no difference in the outcome under the circumstances. See K.S.A. 60-512(1) (statute of limitation for contracts "not in writing"); *Chilson v. Capital Bank of Miami, Fla.*, 237 Kan. 442, 446, 701 P.2d 903 (1985) (contract partly written and partly oral governed by K.S.A. 60-512 for limitations purposes). Based on Vasquez' factual allegations, Cleveland Chiropractic breached a material term of the contract in 2009.

The statute of limitations begins to run when an actionable breach of the contract occurs—not when it's discovered. *Dunn v. Dunn*, 47 Kan. App. 2d 619, 628, 281 P.3d 540 (2012). The breach of a material term is, almost by definition, actionable. *Dexter v.*

23

*Brake*, 46 Kan. App. 2d 1020, 1034, 269 P.3d 846 (2012) (a material breach renders something "substantially less [than] or different [from]" what the parties bargained for). Cleveland Chiropractic's new requirement that students pass the first portion of the licensing examination to graduate breached the contract I have assumed was formed and remained in effect. Vasquez could then have sued Cleveland Chiropractic for specific performance of the contract or for a declaratory judgment as to his contractual rights, especially since he continued to pay tuition and to otherwise meet the requirements for enrollment.

In short, the factual assertions in Vasquez' amended petition demonstrate a material (and, thus, actionable) breach in late 2009, triggering what the parties agree would be a five-year limitation period. Vasquez did not file this breach of contract action until June 8, 2021, well beyond the statute of limitations. The district court properly entered judgment against Vasquez on that basis. And I would affirm for that reason.

Vasquez tries to avert the adverse judgment by arguing the breach did not occur until January 2017, when school officials denied his request to graduate without sitting for the initial portion of the licensing examination. But the argument ignores the action of Cleveland Chiropractic that breached their contract—the adoption of the licensing examination requirement in 2009—and focuses only on when the effects of the breaching action became the most acute for him as he neared completion of the other requirements for graduation.

I would affirm the district court's ruling for those reasons and, therefore, choose not to venture into the much vaster territory that generally encompasses the nature of the contractual relationship between college students and the learning institutions they attend.

24